Argued 18 March, decided 30 March, 1903.

## STATE *v.* SMITH.

[71 Pac. 973.]

CRIMINAL LAW—RES GESTÆ.

1. A declaration by a person charged with a crime, made after his arrest and when sufficient time had elapsed to formulate a plan of defense, is not part of the *res gestæ*, since it is not so intimately connected with the principal event, either in time or character, as to explain or illustrate it.

RULE AS TO ERROR IN REFUSING INSTRUCTIONS.

2. A court may properly refuse requested instructions to a jury where they are not correct expositions of the law as applied to the theory adopted by the party presenting them, and the court does not thereby refuse to present the theory of the party desiring the instructions.

HOMICIDE—SELF-DEFENSE—IMMINENT DANGER—THREATS.

3. The right of self-defense justifying a homicide rests on the necessity of protection from a reasonably apprehended imminent danger, and must be based on some overt act of hostility, mere threats not being sufficient.

SELF-DEFENSE—DANGER MUST BE IMMINENT.

4. An apprehended bodily danger that will justify a resort to force, and an assertion of the right of self-defense, must be imminent, or apparently likely to at once be experienced.

IDEM.

5. To find a person guiltless of homicide in any degree on the ground of self-defense, the jury must find, not only that accused acted under fear of imminent death or great bodily harm, but that there was actually reasonable ground for such fear on his part.

IDEM.

6. A homicide cannot be justified on the ground of self-defense unless it is made to appear that accused had been put in imminent danger by another, and that the killing was done to prevent the apparent commission of a felony by that other on accused.

IMPEACHING VERDICT BY AFFIDAVIT OF JUROR.

7. Affidavits or statements of jurors will not be received to impeach their verdict.

From Multnomah: MELVIN C. GEORGE, Judge.

George Smith appeals from a sentence of death for murder.                                          AFFIRMED.

For appellant there was a brief over the names of *Chas. A. Petrain* and *Wilson T. Hume*, with an oral argument by *Mr. Hume.*

For the state there was a brief over the names of *John Manning*, District Attorney, *Arthur C. Spencer*, and *Harry B. Adams*, with an oral argument by *Mr. Manning.*

MR. CHIEF JUSTICE MOORE delivered the opinion.

The defendant, George Smith, having been convicted of the crime of murder in the first degree, alleged to have been committed in Multnomah County, Oregon, August 22, 1902, by killing one Annie Smith, appeals from the judgment which followed.

1. At the trial, Frank Snow, a detective, having testified that about 12 o'clock M. of the day of the homicide the defendant was brought as a prisoner to the police station in Portland, and that he received some keys from him, was asked by defendant's counsel, "What did he say with reference to those keys when he gave them to you?" An objection to the question on the ground that it was incompetent having been sustained, it is contended that the court erred in not permitting it to be answered. The bill of exceptions shows that the defendant is a colored man, and that the deceased, a white woman, was his wife, and at the time of her death an inmate of a house of ill-fame. A witness for the state testified that a few hours before the homicide he saw the defendant exhibit a revolver to another colored man, saying, "I will get some white person before long." But the defendant, as a witness in his own behalf, denied that he made the threat so imputed to him, and sought to show, by the question propounded to Snow, that he went to his wife's room for a lawful purpose at the time she was killed. To render declarations made by a party after the commission of an act which is the subject of inquiry admissible in evidence as a part of the *res gestæ*, they must have grown out of and been so intimately connected and contemporaneous with such act as to illustrate its character, affording a mirror which involuntarily reflects the cause, motive, or effect of the particular action : *State* v. *Glass*, 5 Or. 73 ; *State* v. *Anderson*, 10 Or. 448 ; *State* v. *Ching Ling*, 16 Or. 419 (18 Pac. 844); *State* v. *Henderson*, 24 Or. 100 (32 Pac. 1030); *State* v. *Brown*, 28 Or. 147 (41 Pac. 1042); *State* v. *Sargent*, 32 Or. 110 (49 Pac. 889). The

bill of exceptions does not show what time elapsed between the homicide and the defendant's incarceration, but, as it must have been ample for him to formulate a plan of defense justifying his conduct or mitigating the consequences of his act, the declaration sought to be established was self-serving, and no error was committed in excluding it.

2. It is maintained that the court erred in refusing to give the jury certain instructions requested by defendant's counsel. Testimony was introduced by defendant tending to prove that one Ed Potello, alias "Kansas," was keeping the defendant's wife as his mistress; that, a controversy having ensued in consequence of such conduct, Potello assaulted the defendant with a pistol, inflicting a wound upon his head; that Potello had informed others that he intended to kill the defendant, and, such threats having been communicated to the latter prior to the homicide, he sought protection from the chief of police and other officers; that defendant, having secured his wife's trunk, containing some of her clothing, locked it in his room, refusing to deliver it upon demand, and that on the day before the homicide he secured a ticket, intending to go to Astoria. The defendant, as a witness in his own behalf, testified as follows: "On the day of the shooting I went down to my wife's room with the keys to the room where her trunk was, to give her the keys, so she could get the things. I went to her room, and she told me to go away, as there was somebody in there. I asked her to have a drink. Some man's voice said to me, 'Bring up two bottles of wine, you black * *' I went down stairs, and brought up the drinks. My wife opened the door, and we talked about the keys, and my going away to Astoria. While I was talking to her, I saw a man who I thought was 'Kansas' crouching past by the bureau and get behind the door in a crouching position and come towards me. I thought the man was 'Kansas,' and that he was going to try to

kill me. I fired the shot intending to protect myself from 'Kansas,' and as I fired, my wife drew back suddenly towards where the man was inside, and the bullet struck her."

The instructions which the court refused to give, so far as deemed applicable to the question involved, are as follows:

" There has been some evidence introduced in behalf of the defense in this case, which, it is claimed by the defendant, tends to prove that one Ed. Potello, otherwise known in the testimony as 'Kansas,' had made threats to inflict bodily harm upon the defendant, and that, in pursuance of such threats, there had been at different times altercations between the defendant and the said 'Kansas,' and that at the time of the shooting testified to in this case the defendant believed that this man 'Kansas' was in the room where the deceased was; and it is claimed by the defendant that, seeing a man in the room with the deceased, he believed that the man was 'Kansas,' and feared that the said 'Kansas' would carry out his threats to inflict great bodily harm upon or to take the life of the defendant, and that, believing this, he acted upon the impulse to protect himself and to prevent the said 'Kansas' from inflicting the said harm, and fired the fatal shot with the intention of preventing the said 'Kansas' from assaulting him, and without the intention of shooting the deceased.

"(1) I therefore charge you that if you believe, from the evidence in this case, that Ed. Potello, or, as he is known in the testimony, 'Kansas,' had made threats against the defendant to inflict death or great bodily harm upon him, that the defendant would have had a right to use such reasonable means to protect himself as, under the circumstances, an ordinarily reasonable man would have used, if the person in the room with the deceased had been 'Kansas'— that is, if you believe that the threats testified to were made, and the defendant had reasonable ground to believe that the said threats would be carried out by 'Kansas,' under all the circumstances of the case, an ordinary reasonable man would have had a right to believe that the

person in the room with the deceased was 'Kansas,' and there were such circumstances and surroundings that would lead an ordinary man to believe that he was in danger of being assaulted or of receiving great bodily harm from the person so in the room with the deceased — then I charge you that the defendant had a right to act upon appearances as they looked to him at the time, or as they would have looked to an ordinary man under all the testimony in this case; and if the testimony should show that the defendant was mistaken in the fact that the man in the room with the deceased was 'Kansas,' he would only be responsible for the appearances as they looked to him at the time; and if you have a reasonable doubt from the evidence as to whether or not the defendant believed that the man in the room with the deceased was 'Kansas,' and that the defendant, in fear of the said 'Kansas,' on account of the threats and other circumstances as I have instructed you, fired the fatal shot, intending then and there to protect or defend himself against an anticipated assault, and that inadvertently and without his fault the deceased came in range of his pistol and received the bullet therefrom which caused her death, and if you have a reasonable doubt as to whether or not the defendant intended the said bullet to strike and wound the deceased, then I charge you that the defendant would not be guilty of murder in the first degree, and you must find him not guilty thereof.

"(2) And I further charge you that if you have a reasonable doubt as to whether or not the defendant, acting under fear of receiving death or great bodily harm from the man in the room on account of any circumstances, whether threats heretofore made by 'Kansas' and communicated to the defendant, or by reason of the crouching position or other suspicious movements of the man in the room, he fired the fatal shot upon the sudden impulse, acting under such fear and under such circumstances, and you have a reasonable doubt as to whether or not he intended to shoot or wound the deceased, you will find the defendant not guilty.

"(3) Where threats are made against a man's life, or threats to inflict great bodily harm or personal injury are made by a person whom the defendant, from the circum-

43 Or.—8.

stances and dealings with such man, has reason to believe that such threats will be carried out, and has full knowledge of the character of such threats and the person making the same, he is not required to wait until he is assaulted or put in imminent danger of having such threats executed by the person making the same, but he has a right to act upon appearances, and, if it shall reasonably appear to him that the person making such threats is about to execute the same, he may use all reasonable means at his command, which appear necessary to him at the time, to defend himself, and prevent the execution or carrying out of such threats, and if he so does he is not guilty of any offense; and if, in so defending himself, he causes an injury or the death of a person other than the one making the threats, if, under all the circumstances of the case, he acted upon reasonable appearances, and drew such conclusions from the circumstances as they appeared to him that a reasonable man would draw, he will not be responsible for the injury or death resulting from his act, if he is mistaken in the person receiving the injury; and in this case, if you have a reasonable doubt as to whether or not the defendant believed the man in the room was Ed. Potello or 'Kansas,' and under the circumstances of the case he had a right, under the law, as I have instructed you, to defend himself, and was honestly mistaken in regard to the identity of the man in the room, he would not be criminally responsible for the result of the shooting. If you have a reasonable doubt as to whether or not he intended to shoot at the man in the room or at the deceased, you must acquit the defendant."

Exceptions having been taken to the court's refusal to give these instructions, it is argued that the defendant was entitled to have his theory of the case fully presented to the jury, and, that right having been denied him, error was thereby committed. The rule is well settled in this state that a party to an action, who has given testimony tending to sustain the issues on his part, is entitled to have the jury instructed on his theory of the case: *Fiore* v. *Ladd*, 25 Or. 423 (36 Pac. 572); *Barnhart* v. *Ehrhart*, 33 Or. 274 (54 Pac.

195); *Farmers' Bank* v. *Woodell*, 38 Or. 294 (61 Pac. 837, 65 Pac. 520); *Lewis* v. *Craft*, 39 Or. 305 (64 Pac. 809). In *Anderson* v. *North Pac. Lum. Co.* 21 Or. 281 (28 Pac. 5), Mr. Justice LORD, commenting upon this principle, says : " Without doubt it is the duty of the court to instruct the jury upon every point relevant to the issue, and either party has the right to have the jury so instructed plainly and pointedly, so as to avoid liability to mistake or error. Nor can it be denied that, if the court should fail so to instruct, it would be error to refuse instructions calculated to cure the omission." But before error can be successfully predicated upon the court's refusal to give the instructions requested, it must appear that they were correct expositions of the law applicable to the theory adopted by the defendant: Blashfield, Instr. to Juries, § 137.

3. The first instruction asked for stated that if the jury believed that Potello had made threats against the defendant to inflict death or great bodily harm upon him, he would have had a right to use such reasonable means to protect himself as, under the circumstances, an ordinary reasonable man would have used, if the person in the room with the deceased had been "Kansas." The reasonable means to be used in case of such threats is not indicated, but, as death ensued from the use of a pistol, it would seem to be implied from the language stated that, if Potello had threatened to kill the defendant, or to inflict upon him great bodily injury, he was thereupon justified in using a deadly weapon which might result in taking the life of Potello, without any overt act of a hostile character or any demonstration upon the part of the latter that would induce the defendant, as a reasonably prudent man, to believe that he was in imminent danger. Such is not the law. The right of self-defense rests upon the broad foundation of necessity (*State* v. *Morey*, 25 Or. 241, 35 Pac. 655, 36 Pac. 573; *Stanley* v. *Commonwealth*, 86 Ky. 440, 6 S. W. 155, 9

Am. St. Rep. 305), which is evidenced by a real or an apparent exhibition of force, to repel which, and to allay a reasonable apprehension of imminent danger, superinduced by some overt act, force may also be used (*United States* v. *Outerbridge*, Fed. Cas. No. 15,978), but without such necessity the right to resort thereto does not exist.

4. It is further stated in said first instruction that, if "there were such circumstances and surroundings that would lead an ordinary man to believe that he was in danger of being assaulted or of receiving great bodily harm from the person so in the room of the deceased, then I charge you," etc. It will be observed that the word "danger" is not qualified by the word "imminent." In *United States* v. *Outerbridge*, Fed. Cas. No. 15,978, Mr. Justice FIELD, in defining such limiting word, says : "By 'imminent danger' is meant immediate danger—one that must be instantly met, one that cannot be guarded against by calling on the assistance of others or the protection of the law." If the defendant did not, as a reasonably prudent man, apprehend the existence of *immediate* danger from the apparently probable execution of said threats, the necessity adverted to did not exist, and therefore he was not justified in resorting to the use of force. These elements having been omitted, no error was committed in refusing to give the first instruction.

5. In the second, the charge requested reads in part : "And I further charge you that if you have a reasonable doubt as to whether or not the defendant, acting under fear of receiving death or great bodily harm from the man in the room, * * fired the fatal shot upon the sudden impulse, acting under such fear and under such circumstances, and you have a reasonable doubt as to whether or not he intended to shoot or wound the deceased, you will find the defendant not guilty." In *State* v. *Morey*, 25 Or. 241 (35 Pac. 655, 36 Pac. 573), it was held that the right

of self-defense does not depend wholly upon the belief which the person claiming it entertained, but whether or not there was ground for a reasonable belief on his part that he was in danger of death or great bodily harm; Mr. Justice BEAN saying: "A man, though in no apparent danger, might kill another through fear, alarm, or cowardice, under the belief, honestly entertained, that great bodily harm is about to be inflicted upon him; and certainly it could not be claimed that under such circumstances he would be justified in so doing, because the belief would be an unreasonable one, and not justified by the circumstances in which he was placed. * * The reasonableness of the defendant's belief was to be determined from his standpoint, but it was a question for the jury as to whether he had sufficient grounds upon which to base such belief." If the defendant's fear was not well founded, he would not be guiltless in taking the life of a person whom he might have suspected of being Potello; for if he, intending to kill Potello, shot at, and, missing him, killed his wife, he is as guilty as though he had killed Potello: *State* v. *Johnson*, 7 Or. 210. Unless his fears were such as a reasonably prudent man would have entertained under all the circumstances, he would have been guilty of manslaughter at least; and hence an instruction to the jury to find him not guilty would be erroneous, and no error was committed in refusing to give it.

6. The statement in the third refused instruction that defendant was not required to wait until put in imminent danger is clearly erroneous. The right of self-defense will not avail where the difficulty was induced by the party himself: *State* v. *Hawkins*, 18 Or, 476 (23 Pac. 475). Before one can excuse his conduct in taking the life of another, it must appear that it was done to prevent the apparent commission of a felony by the latter upon him: *State* v. *Olds*, 19 Or. 397 (24 Pac. 394). No one is justified in taking

the life of another, unless the danger of suffering great bodily harm, or of losing his own life is imminent: *Goodall* v. *State*, 1 Or. 334 (80 Am. Dec. 396); *State* v. *Tarter*, 26 Or. 38 (37 Pac. 53); *State* v. *Porter*, 32 Or. 135 (49 Pac. 964). The legal principle stated in the third instruction asked for being erroneous, no error was committed in refusing the request therefor.

7. It is insisted that the court erred in overruling the motion for a new trial, and that, notwithstanding the action of a court in such matters is an exercise of discretion repeatedly held not to be subject to review, the consequences resulting from its refusal in this case ought to render an examination of the error assigned necessary. Assuming, *in favorem vitæ*, that the point insisted upon is well taken, we will, in the present instance, examine the reasons advanced in support of the motion for a new trial: *State* v. *Magers*, 36 Or. 38 (58 Pac. 892). The affidavit of one of the jurors is to the effect that during the trial Chauncey Ball, another juror, became dangerously ill, necessitating a postponement of one day; that when Ball returned, and the trial was resumed, he was unable to occupy his chair, and was frequently attended by a physician; that when the jury retired to deliberate on their verdict the juror making the affidavit was induced to consent to the conclusion reached under the apprehension that if they were not discharged without delay the effect of the confinement upon Ball would be serious. The affidavits of two other jurors, however, while admitting Ball's indisposition, are to the effect that his condition in the jury room was no worse than at the trial; that he took a part with the other jurors in discussing the testimony and deliberating upon the verdict; and that they heard nothing said by any of the jurors leading them to believe that the verdict of murder in the first degree was agreed upon because of Ball's condition. In *Cline* v. *Broy*, 1 Or. 89, it was held that the

affidavit of jurors will not be received to impeach their verdict.    Judge Thompson, in his work on Trials (vol. 2, § 2618), speaking upon this subject, says : " Upon grounds of public policy, courts have almost universally agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach the verdict."    The rule thus announced is supported by such a decided weight of judicial utterance that we deem further citation of authority in support thereof unnecessary.

No error having been committed by the trial court, it follows that the judgment is affirmed.          AFFIRMED.