Argued 26 March, decided 20 April, 1903.

**STATE v. McCANN.**

[72 Pac. 137.]

TRIAL — CROSS-EXAMINATION.

1. On a prosecution for a felonious assault, the prosecuting witness having testified on cross-examination that he had had some difficulty with defendant over some mining claims, it was not error to exclude a question as to whether he had made some relocations whereby the defendant had been left out, for even if he had been unlawfully excluded from some rights, it was no justification for the assault, and the answer might have tended to confuse the minds of the jurymen.

STATEMENTS SUBSEQUENTLY MADE NOT PART OF THE RES GESTÆ.

2. Statements made by a prosecuting witness after the assault in question had occurred, and after the witness had been removed from the scene, are not competent evidence as part of the *res gestæ*.

CROSS-EXAMINATION — BIAS OR PREJUDICE.

3. On a prosecution for a felonious assault, statements made by the prosecuting witness afterward as to what he would have done at the time had he been armed with a gun, are not competent, since they do not tend to explain the occurrence, or to show the motives or feelings of the witness.

FOUNDATION FOR IMPEACHMENT — CROSS-EXAMINATION.

4. Though a prosecuting witness had testified in chief that he was not armed with a pocketknife, it was not error to exclude a question asked him on cross-examination as to whether he had afterward made statements as to what he would have done had he had a gun instead of a knife, as such question was not broad enough to lay a foundation for his impeachment on that subject.

INSTRUCTION ON RIGHT OF SELF-DEFENSE.

5. On a prosecution for felonious assault the evidence showed that defendant went out of his way and began to strike the prosecuting witness, calling him vile names, and drew his pistol. The latter arose, laid aside a knife with which he had been whittling, and, reaching for the weapon, followed defendant, who stepped backward and fired. *Held*, that it was not error to instruct that one cannot claim the benefit of the law of self-defense after he has intentionally put himself where he knows or believes he will have to invoke its aid; that circumstances justifying assault must be such as to render it unavoidable; and that, if defendant could have avoided any conflict, it was his duty to do so, and so render a resort to the law of self-defense unnecessary.

From Josephine: HIERO K. HANNA, Judge.

Frank McCann appeals from a conviction of assault with a deadly weapon.          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. H. D. Norton* and *Mr. Robert G. Smith.*

For the state there was a brief and an oral argument by *Mr. Andrew M. Crawford,* Attorney-General, and *Mr. A. E. Reames,* District Attorney.

MR. CHIEF JUSTICE MOORE delivered the opinion.

The defendant, Frank McCann, having been convicted of the crime of assault with a deadly weapon, alleged to have been committed in Josephine County September 20, 1901, upon one David Halliday, was sentenced to imprisonment in the penitentiary, from which judgment he appeals.

1. It is contended by his counsel that the court erred in refusing to permit the prosecuting witness to answer certain questions propounded to him. It appears that McCann and Halliday had been mutually interested in some mining claims, and the latter, appearing as a witness for the state, was asked on cross-examination: "There was some little difficulty which arose between you and McCann over those claims, wasn't there?" to which he replied, "No, sir; there wasn't. Q. Did you make some relocations there—you and others—and leave McCann out?" An objection to this question having been sustained, an exception was allowed. If Halliday relocated mining claims in which he and McCann were interested, and thereby deprived the latter of all right thereto, he could, by applying to the courts, have secured redress for the wrong sustained, and had no right to resort to the use of force as a means to adjust his supposed grievance. The question concerning the relocation of the mining claims was immaterial, and as it might have misled the jury into seeking for an excuse to justify the assault, if permitted to be answered, no error was committed as alleged.

2. The prosecuting witness having been recalled by the

state, the following questions were propounded to him on cross-examination, to wit: "Mr. Halliday, I desire to ask you if after you were taken to your room from the office of the hotel, on the evening of September 20th, you said to George Hartman, who assisted you up there, in his presence and in the presence of those who were in the room, who are unknown to me, that you wished that you had a gun, instead of a knife, or words to that effect? Q. Did you say this—if you had a gun, instead of a knife, you would have done business with him—or words to that effect?" Objections to these questions were interposed on the ground that they were irrelevant and immaterial, and not cross-examination, but no ruling appears to have been made thereon by the court. "Q. I will ask you, as a matter of fact, when you followed McCann, you did not have a knife in your hand? A. No, sir. Q. I will ask you if you did not say to George Hartman, after you were taken to the room, if you had a gun, instead of a knife, you would have done business, or words to that effect?" An objection to this question on the ground that it was irrelevant and immaterial having been sustained, an exception was allowed. The defendant's counsel state in their brief that Halliday, on his direct examination, testified that at the time he was assaulted he was not armed with a knife, and maintain that the questions asked him were designed to test his credibility, to show his purpose and prejudice, and to lay a foundation for his impeachment, and hence the court erred in refusing to permit him to answer. How soon after the assault Halliday was taken to the room is not disclosed, but, as the language sought to be imputed to him was not uttered during the altercation with the defendant, what the witness might have thereafter said was no part of the *res gestæ*, and therefore not admissible on that ground: *State* v. *Glass*, 5 Or. 73; *State* v. *Garrand*, 5 Or. 216; *State* v. *Ching Ling*, 16 Or.

419 (18 Pac. 844); *State* v. *Sargent*, 32 Or. 110 (49 Pac. 889); *State* v. *Smith*, 43 Or. 109 (71 Pac. 973).

3. To enable the court and jury to determine the weight and value that should be given to the testimony of a witness, he may be asked on cross-examination such questions as tend to show his relation to the parties, his interest in the subject-matter of the litigation, and the motives, inclination, and prejudices that may have colored or distorted his testimony in chief: 1 Greenl. Ev. § 466 ; *Johnson* v. *Commonwealth*, 115 Pa. St. 369 (9 Atl. 78); *People* v. *Furtado*, 57 Cal. 345. In *Watson* v. *Twombly*, 60 N. H. 491, Mr. Justice CLARK, illustrating this mode of seeking to attain the truth, says : "Evidence irrelevant to the issue may be material, as affecting the credibility of the witness, when it tends to show interest, prejudice, bias, or the relationship and feelings of the witness toward the party. It is the right of a party to show the state of feeling of an opposing witness, and this may be done by cross-examination or by independent testimony. For this purpose it is competent to inquire of the witness concerning acts, declarations, and circumstances showing the existence of hostile feelings or prejudice, and the latitude of cross-examination is not restricted by the fact that the witness is a party testifying in his own behalf." The question propounded to Halliday did not relate to any bias or prejudice that he may have entertained toward the defendant at the time he appeared as a witness for the state, but it referred to an alleged expression of what he would have done to him at the time he was assaulted if he had been armed with a gun. It is usually man's disposition to forgive an injury, and though he may, in moments of anger, or while suffering from pain inflicted by his adversary, threaten to do him bodily harm, yet, when the passion subsides or the pain ceases, reason asserts its sway, and as, time elapses a forgiving spirit generally ensues. The ques-

tion propounded to the prosecuting witness, having related to a threat made by him at the time he was injured, and not being calculated to elicit the state of his feelings toward the defendant at the time of the trial, was immaterial.

4. It will be remembered that the question asked Halliday implies that he had a knife, and, assuming that he testified in chief that he was not so armed at the time he was assaulted, it remains to be seen whether the court erred in refusing to permit a foundation to be laid to impeach him in this manner. A pocketknife which it is claimed the prosecuting witness possessed is a means that could have been used for offense or defense, and hence a weapon; but, as such an instrument is not generally carried for that purpose, a person might have one in his pocket, and not be "armed" with a knife. We think the word "armed," when relating to an instrument not constructed for nor usually resorted to as a weapon, must necessarily mean the manual employment of the means in such a a manner as to render it available for immediate offensive or defensive use. The prosecuting witness may therefore have had a pocketknife in his possession, and not have been "armed" therewith; and, this being so, the question asked him was not, in our opinion, broad enough to lay a foundation for his impeachment upon that subject, and no error was committed in sustaining objections to the interrogatories.

5. It is insisted by defendant's counsel that the court erred in charging the jury as follows: "I further instruct you, in relation to the law of self-defense, that one cannot claim its benefits after he had intentionally put himself where he knows or believes he will have to invoke its aid. Circumstances justifying assault, in the law of self-defense, must be such as to render it unavoidable. If you believe from the evidence, and beyond a reasonable doubt, that

the defendant could have avoided any conflict between himself and Halliday without increasing the danger to himself, it was his duty to avoid such conflict and so render a resort to the law of self-defense unnecessary." It is argued that this instruction is misleading, because it ignores the fact that, though the defendant may have begun the assault, he may nevertheless have endeavored to withdraw from the conflict at the time Halliday was advancing upon him with a knife as the defendant testified, and that it is also contrary to law, for the reason that it conveyed to the jury the idea that it was the imperative duty of the defendant to retire, without regard to the character of or the place where the assault was committed upon him. It appears that on September 20, 1901, Mc-Cann, having entered the corridor of a hotel at Grants Pass, where he and Halliday were guests, passed the latter, who was sitting in the room near its entrance, whittling with a pocketknife, and in a few minutes started as if to go out, but when near the door he suddenly turned and began to strike Halliday with his fists, calling him vile names, and drew his pistol. Halliday rose, laid aside his knife, as all the witnesses testify except the defendant, and, reaching for the weapon, followed McCann, who stepped backwards, and, as he attempted to grasp the pistol, McCann fired ; the bullet striking him in the forehead, fracturing his skull, and coming out at the side of his head. Though McCann was a guest at the hotel, and rightfully in the room, yet in passing out of it he evidently sought to provoke a difficulty with Halliday by striking him with his fists and calling him opprobrious names and drawing his pistol ; and when Halliday rose he backed away, probably expecting his adversary would follow him, and thus furnish an excuse for the use of the weapon which he held in his hand.

The right of self-defense is based upon the broad ground

of necessity, which is evidenced by a real or an apparent exhibition of force, superinducing a reasonable apprehension of imminent danger, which justifies the use of force to repel the force, but without such necessity the right to resort thereto does not exist : *State* v. *Morey*, 25 Or. 241 (35 Pac. 655, 36 Pac. 573); *State* v. *Smith*, 43 Or. 109 (71 Pac. 973). Halliday, prior to the assault upon him, made no demonstration that would lead McCann, as a reasonably prudent man, to believe that he was in any danger, immediate or remote, and hence no necessity existed for a resort to the use of force. The language employed by the court in the instruction complained of must be read in the light of the surrounding facts. It is possible that, under some circumstances, the charge might be subject to objection, for in a free country it is not expected that one person shall flee from another, and it may be that the demands of business might require one intentionally to go where he knows or has reason to believe he may be in imminent danger, and possibly compelled to resort to force as a matter of self-defense. In the case at bar, however, though it is conceded that the defendant had a right to enter the hotel, yet in passing out of it he purposely turned aside to assault Halliday. No apparent necessity existed for the course which he adopted, and he could evidently have avoided any conflict without increasing the danger to himself. If the defendant, after precipitating the attack, withdrew from the conflict, thereby evincing a determination to avoid further difficulty, the testimony fails to disclose such fact, and it was unnecessary to instruct the jury upon a theory that had no facts to support it. In *State* v. *Hawkins*, 18 Or. 476 (23 Pac. 475), Mr. Justice STRAHAN, in commenting upon a similar state of facts, says : "When a man is armed, and seeks another for an affray or an altercation, the law will not permit him to pro-

*43 Or.—11.*

voke and urge on the difficulty to a point where there is an appearance of an attempt to use weapons, and then justify the aggressor in taking of life simply on the ground of apparent danger. In such case he is the aggressor, and the active cause of ·the danger which menaces him, and he must abide by that condition of things which his own lawless conduct has produced." The instruction, in our opinion, correctly states the law applicable to the facts involved, and no error was committed in giving it. It follows from these considerations that the judgment is affirmed.          AFFIRMED.

Decided 8 June, rehearing denied 3 August, 1903.