Argued January 11, decided February 1; rehearing denied April 26, 1910.

## STATE v. GOODAGER.

[106 Pac. 638; 108 Pac. 185.]

HOMICIDE—TRIAL—INSTRUCTIONS—SELF-DEFENSE.

1. In a prosecution for murder, where the evidence showed that defendant, a barkeeper, shot M. in an altercation following M.'s ejectment from and return to the place of defendant's employment, it was error to charge that one cannot claim self-defense after he has intentionally put himself where he knows or believes he will have to invoke its aid, that the circumstances justifying the taking of life must be such as to render it unavoidable, and that if defendant could have avoided any conflict, it was his duty to do so, since defendant was not

bound to flee and abandon his place of business to his adversary in order to avoid an altercation.

Criminal Law—Review—Harmless Error—Presumptions.

2. When on appeal it is manifest that an error has been committed, prejudice will be presumed, unless it affirmatively appears from the record that no prejudice could have resulted.

Witnesses—Cross-Examination—Impeachment.

3. Minutes of testimony, given by a witness on preliminary examination of one accused of murder, if not signed by him, may be used only to refresh the memory of the reporter taking them, if called to rebut statements evoked in conflict therewith, and the witness cannot be interrogated on the trial concerning them, either for the purpose of laying a foundation for impeachment, or for the contradiction of statements elicited thereby, either by reading seriatim the questions and answers, or by showing the witness the transcript.

Criminal Law—Trial—Rulings on Evidence—Exceptions.

4. The rule that, to save an exception to a ruling excluding a question, the information expected to be elicited should appear, unless it is clearly obvious, does not apply to cross-examination of witnesses, in which case it is sufficient to state its object in a general way, so that, where counsel stated that interrogatories regarding the testimony of witnesses made at the preliminary examination of accused were in order to lay a foundation for the impeachment of the witness, this was sufficient.

Criminal Law—Appeal—Matters Not Shown by Record—Admissions of Counsel.

5. The public always has an interest in the liberty of the accused, of which he cannot be deprived except in the manner prescribed by law; and hence the prosecution may admit on appeal a state of facts in favor of accused which is not shown by the record.

Criminal Law—Appeal—Rehearing—New Theory of Case.

6. Counsel cannot be heard upon oral argument upon one state of facts there admitted, and after an adverse decision, move for rehearing, and urge that the facts previously conceded are not in harmony with the record.

From Multnomah: John B. Cleland, Judge.

The defendant, Hans Goodager, was convicted of manslaughter, and from the judgment and sentence which followed, he appeals.                    Reversed.

For appellant there was a brief and an oral argument by *Mr. Seneca Fouts.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. George J. Cameron,* District Attorney, and *Mr. Thad W. Vree-*

*land,* Deputy District Attorney, with an oral argument by *Mr. Vreeland.*

MR. JUSTICE KING delivered the opinion of the court.

Hans Goodager was indicted and tried for murder in the first degree for the killing of Tony Moer, found guilty of manslaughter, and sentenced to 12 years' imprisonment, from which this appeal is prosecuted.

1. The conceded facts disclose it was established at the trial that defendant, on February 4, 1909, while in a saloon, where he was engaged in attending bar, shot and killed Moer in an altercation following decedent's ejectment from and return to the place of defendant's employment. The court, among other things, instructed the jury as follows:

"You are further instructed in relation to the law of self-defense, that one cannot claim its benefits after he had intentionally put himself where he knows or believes he will have to invoke its aid. Circumstances justifying an assault, in the law of self-defense, must be such as to render it unavoidable. If you find from the evidence, and beyond a reasonable doubt, that defendant sought an altercation between himself and Tony Moer, the deceased, or find from the evidence beyond a reasonable doubt that the defendant could, without any unreasonable or unnecessary surrender of his own rights and privileges, have avoided any altercation between himself and Tony Moer, the deceased, it was the duty of the defendant to avoid such altercation, and so render a resort to the law of self-defense unnecessary."

This instruction constitutes one of the principal errors assigned, and appears to have been taken from one given and quoted in *State* v. *McCann,* 43 Or. 155, 159 (72 Pac. 137). It is admitted the defendant was, at the time of the tragedy, in his place of business, and engaged in a lawful occupation. Under these facts it cannot unqualifiedly be held that, by reason of being there on the occasion of the difficulty, defendant could not avail him-

self of the law of self-defense.   This instruction was also assailed in *State* v. *McCann,* where it was upheld on appeal.   As applied in that case there can be no doubt as to its sufficiency, or in the soundness of the decision by which it was sustained, but that the rule there enunciated is not without exceptions is manifest from observations made in its consideration, concerning which Mr. Justice Moore, speaking for this court, at page 161 of 43 Or., (at page 139 of 72 Pac.), in the opinion, says:

"The language employed by the court in the instruction complained of must be read in the light of the surrounding facts.   It is possible that, under some circumstances, the charge might be subject to objection, for in a free country it is not expected that one person shall flee from another, and it may be that the demands of business might require one intentionally to go where he knows or has reason to believe he may be in imminent danger, and possibly compelled to resort to force as a matter of self-defense."

This is clearly applicable to the case under consideration.   The defendant may have known that, by reason of his occupation, making it necessary for him to be in the saloon on the occasion, and to remain there, he was placing his life in danger, or was in danger of great bodily harm.   But he had a lawful right to be there, and it was not incumbent upon him to abandon his premises to his adversary, even though by so doing he might avoid an altercation.

2. The jury may have inferred from the instruction, as they easily might have done, that, because of defendant remaining in the building after the controversy arose, he was not entitled to invoke the aid of self-defense, and although, under the proof, they may not have deemed themselves justified in finding him guilty of either of the higher degrees, they may have thought that, since the accused was deprived of the right of self-defense, it became their duty, under the instruction, to find him

guilty of manslaughter.  When coupled with these facts, the instruction is clearly erroneous, and, as stated in *Carter* v. *Wakeman,* 45 Or. 427, 430 (78 Pac. 362, 363):

"When it is manifest that an error has been committed, prejudice will be presumed, unless it affirmatively appears from an inspection of the record that no prejudice could have resulted therefrom."

This condition the record does not disclose, nor are any facts conceded from which we may infer its harmless effect.  We are impelled, therefore, to hold the error prejudicial, necessitating the granting of a new trial.

3. In view of a new trial other errors assigned will be considered.  Counsel for the defense, at the trial, attempted to lay a foundation for the impeachment of one of the State's witnesses by reading to him questions and answers in his testimony, taken at the defendant's preliminary examination.  To this character of examination objections were made and sustained, the trial court holding the questions and answers could not be read seriatim to the jury, and indicated, as the proper procedure, the interrogation of the witness as to any statements claimed to have been made by him on the occasion, concerning which the inquiry was intended to be made.  To these rulings exceptions were taken by the counsel for defense, who stated the excluded line of inquiry was for the purpose of laying a foundation for impeachment.  Under the well-settled rule in this State the method of inquiry attempted is not permissible, and no error was committed in its exclusion.  Written statements, purporting to have been made by a witness, must first be exhibited to him, before any question may be put concerning the statements therein.  In fact the statute expressly so provides.  Section 853, B. & C. Comp.; *State* v. *Steeves,* 29 Or. 85 (43 Pac. 947); *State* v. *Crockett,* 39 Or. 76 (65 Pac. 447). This was clearly held in the case last cited, where the defense, without having first shown to the witnesses the

testimony given by them at the coroner's inquest, offered it in evidence for the purpose of their impeachment, the admission of which was refused, and the ruling sustained on appeal. The minutes of testimony, given by a witness on preliminary examination, if not signed by him, are not admissible in evidence at the trial of an accused, either for the purpose of laying a foundation for impeachment, or for the contradiction of statements elicted thereby. The use of memoranda of testimony so taken, when not signed, is allowable only for the purpose of refreshing the memory of the reporter taking it, if called to rebut statements evoked in conflict therewith, and the method of laying a foundation for impeachment is restricted to the usual manner of propounding interrogatories, as indicted by the trial court: *State* v. *Bartmess,* 33 Or. 110, 125 (54 Pac. 167). Defendant was accordingly not entitled to interrogate the witness either by reading seriatim, the questions and answers, or by showing the witness the transcript, or any part thereof.

4. Some controversy arises as to the proper method of saving an exception, and in presenting rights relative thereto on appeal under such circumstances, and, as the question may again arise, attention will be directed to what we deem to be the rule upon the subject. To save an exception to the ruling of the court, in not allowing the witness, on direct examination, to respond to an interrogatory, the information expected to be elicited by the answer or the line of inquiry rejected should appear: 8 Ency. P. & P. 236; *Kelley* v. *Highfield,* 15 Or. 277, 282 (14 Pac. 744) ; *Stanley* v. *Smith,* 15 Or. 505, 507 (16 Pac. 174) ; *Tucker* v. *Constable,* 16 Or. 407 (19 Pac. 13) ; *State* v. *Gallo,* 18 Or. 423 (23 Pac. 264) ; *Craft* v. *Dalles City,* 21 Or. 53 (27 Pac. 163) ; *State* v. *Bartmess,* 33 Or. 110, 125 (54 Pac. 167) ; *State* v. *Savage,* 36 Or. 191, 209 (60 Pac. 610: 61 Pac. 1128) ; *Jennings* v. *Oregon Land Co.,* 48 Or. 287, 291 (86 Pac. 367) ; *Ireland* v. *Ward,* 51

Or. 102 (93 Pac. 932). As an illustration of a convenient manner of disclosing the purpose of rejected interrogatories, see *State* v. *Doris*, 51 Or. 136, 156 (94 Pac. 44: 16 L. R. A. (N. S.) 660). However, there are exceptions to this rule, as stated in *Ireland* v. *Ward*, 51 Or. 104 (93 Pac. 932).

"If, from the form of a question propounded to a witness, the answer is apparent, it is not necessary for counsel, when an objection is interposed, to state to the court what reply is reasonably expected to the interrogatory, for that is obvious."

See, also, *Whale* v. *Gatch*, 42 Or. 251, 254 (70 Pac. 832). Another exception to the rule is where the testimony sought to be elicited is on cross-examination, as in the case at bar (8 Ency. P. & P. 238, and *Clark* v. *Sleet*, 99 Va. 381: 38 S. E. 183), under which circumstances it is manifest that this rule should not be invoked; to do so would often convey to the witness the very facts not desired to be disclosed, and such disclosure, it is obvious, would frequently tend to defeat the very purpose of the cross-examination. To require a statement of the facts expected to be obtained from an adverse witness would, in effect, be to demand that counsel should speculate upon the probable answer of the witness, or to deal unfairly with the court: *Cunningham* v. *Railway Co.*, 88 Tex. 534 (31 S. W. 629). Nor is this view inconsistent with the holding in *State* v. *Savage*, 36 Or. 191, 216 (60 Pac. 610: 61 Pac. 1128), as contended, in which the point was neither presented nor considered. It is only necessary, therefore, on cross-examination, in the event the question or line of inquiry does not suggest the purpose thereof, that its object be stated in a general way, or in some manner not calculated to apprise the witness of the special purpose of the inquiry. Such method was pursued in this instance; the counsel stating his object to be the laying of a foundation for the impeachment of

witness, and the witness was not necessarily apprised of the particular points upon which he was sought to be impeached, or prepared, by advance information, to defeat the purpose of the interrogation. However, for the reasons stated, the questions, in the form asked, were improper, and no error was committed in excluding them.

But, for the error in giving the instruction considered, the judgment will be reversed and a new trial ordered.

REVERSED.

Decided April 26, 1910.

ON PETITION FOR REHEARING.

[108 Pac. 185.]

MR. JUSTICE KING delivered the opinion of the court.

The State petitions for a rehearing, basing its principal contention on the ground that the record fails to show the conceded facts alluded to in the opinion.

5. The record discloses that the tragedy occurred in the back room of the main building. At the oral argument, constituting the last statement of counsel's position on appeal, counsel for the State admitted, and argued the case on the assumption, that defendant, at the time of the shooting, was in the saloon, where he was engaged in attending bar, from which it followed, as a matter of law, that he was where he had a lawful right to be. This admission, coupled with the testimony shown by the record, was ample to justify the conclusion reached in the former opinion. The public always has an interest in the liberty of the accused, of which he cannot be deprived, except in the manner prescribed by law: *Hopt* v. *Utah*, 110 U. S. 574, 579 (4 Sup. Ct. 202: 28 L. Ed. 262) ; *Crain* v. *U. S.*, 162 U. S. 625, 644 (16 Sup. Ct. 952: 40 L. Ed. 1097) ; *State* v. *Walton*, 50 Or. 142, 149 (91 Pac. 490: 13 L. R. A. (N. S.) 811). It was, therefore, within the power of the State to make such admission in

defendant's behalf: *People* v. *Lewis,* 127 Cal. 207 (59 Pac. 830) ; *State* v. *Goddard,* 146 Mo. 177 (48 S. W. 82).

6. Furthermore, counsel cannot be heard at an oral argument upon one theory or one state of facts, there admitted, and, after receiving an adverse decision predicated thereon, return by motion for rehearing, and urge in such motion, and at such hearing, that the facts previously conceded, and upon which the decision was rendered, are not in harmony with the record, and ask that he again be heard upon a different theory. Experimenting with the court in such manner, whether by design or oversight, cannot be sanctioned. To countenance such action would leave both the court and the litigants powerless to determine when litigation is terminated, and the object sought thereby defeated in the end by the hypothetical practice so established. The motion for rehearing is denied.

REVERSED : REHEARING DENIED.