Argued September 24, reversed and remanded October 19,
petition for rehearing denied December 9, 1971,
petition for review denied January 25, 1972

## STATE OF OREGON, *Respondent, v.*
## JIMM BOB LOCKE, *Appellant.*

489 P2d 991
491 P2d 214

*William Frye,* Eugene, argued the cause for appellant. With him on the brief was Robert D. Woods, Eugene.

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendant appeals from conviction of second degree murder. He was charged with first degree murder.

The only assignment of error concerns the following jury instruction:

"I instruct you that, if you believe from the evidence and beyond a reasonable doubt, that the defendant could have avoided any conflict between himself and decedent, without increasing the danger to himself, it was his duty to avoid such conflict, and retreat, and so to render a resort to the law of self-defense unnecessary."

This instruction, which states the general rule of self-defense with reference to the duty to avoid conflict, was given twice—the second time when the jury requested additional instruction. Defendant excepted to it on both occasions because it placed an "absolute duty" upon the defendant to retreat; thus, it did not take into consideration the fact that the defendant was in his home when the deceased physically attacked him and he feared that the deceased would carry out threats he made to kill the defendant.

The only part of the transcript we have is the direct and cross-examination of the defendant, which, by itself, presents the defendant's version of the facts. This version apparently varies much from that of other witnesses. In his testimony defendant said that he and the deceased, who was a man of American Indian ancestry, whose grandfather was in the "Battle of Bull Run, or something, or Big Horn, or something * * *," and a third person, whose name was Summers, had been drinking liquor extensively together—first at taverns and on the road and finally in defendant's home. He said that the deceased, without prior warning, slapped defendant from a chair in which he was sitting, and said:

> "* * * 'You stole my country. I'm going to kill you white son-of-bitches.'"

Defendant said that deceased kneeled or bent over him and

> "* * * Every time I tried to get up, he hit me, or slapped me.
> "* * * * * *

> "He didn't say anything, except, 'I'm going to kill you white sons-of-bitches.' That's last ten things he said."

Defendant, from the floor, requested Summers to get a pistol from a bedroom, where Summers knew it was, and stop the altercation. Summers got the pistol and pointed it at the deceased, who then let defendant go. Defendant said that:

> "* * * I went around him [Summers] in [to] the bedroom and grabbed my rifle."

He said that he thought that the deceased might take the pistol away from Summers and carry out the threat to kill. So,

> "I grabbed a gun and filled it * * *.

"* * * * *

"I went right back to that corner and fired." The shot was fatal.

Under cross-examination the d e f e n d a n t admitted that when he came around the corner and shot the deceased, the deceased was sitting at a table with his arms folded.

Defendant was in his home when attacked by the deceased. Was it error to tell the jury that if it believed that the defendant could have avoided the conflict by retreating, without increasing the danger to himself, it was legally necessary for him to do so? The rule with reference to self-defense when the attacked person is in his own home or premises, or a place where he works, even when the attacker is an invitee therein, is modified from that applying where the participants in the altercation are in an area neutral to both of them. *State v. Gibson,* 43 Or 184, 73 P 333 (1903); *State v. McCann,* 43 Or 155, 72 P 137 (1903); *State v. Goodager,* 56 Or 198, 106 P 638, 108 P 185 (1910); *People v. Tomlins,* 213 NY 240, 107 NE 496 (1914); *People v. McGrandy,* 9 Mich App 187, 156 NW2d 48, 26 ALR3d 1292 (1967).

In an Annotation, 26 ALR3d 1296, 1299 (1969), the author states the exceptions to the general rule, saying:

"* * * [T]he most universally applied being the rule that a person who is assaulted in his own dwelling, and who is without fault in bringing on the difficulty, need not retreat but, being in his 'castle,' may stand his ground and kill his assailant if necessary to save himself from death or great bodily harm."

The defendant's version of the altercation may well justify the inference that the violence was over

and the deceased was no longer a threat, if he ever was, to the defendant's life. If this were clearly so, self-defense should not have been submitted to the jury. If not, the jury should determine the facts. *See, State v. Nodine,* infra. The state contends that this was clearly so, hence there was no basis for giving any instruction on self-defense and the defendant was not harmed by the one which was given. However, the defendant testified that deceased had, within seconds of the fatal shooting, repeatedly threatened to kill defendant, and that he feared deceased would take the pistol from Summers and carry out his threat. In *State v. Rader,* 94 Or 432, 454, 186 P 79 (1919), the court said:

> "* * * When the court assumes to apportion the amount of real or threatened danger it invades the province of the jury * * *."

In *State of Oregon v. Nodine,* 198 Or 679, 717, 259 P2d 1056 (1953), we are told that the court determines whether there is evidence to take the defense to the jury. In stating this rule the court cited in support of it *Silas Gladden vs. The State of Florida,* 12 Fla 562 (1869), which bears some factual similarities to the case at bar. There, two men were involved in a physical altercation a half hour before one of them shot and killed the other. As they had separated after the altercation the victim had said he would kill defendant before the day was out. Defendant went directly to his home, over a mile away, got a gun, returned and shot the victim who was then walking away from him. With reference to whether a requested self-defense instruction should have been given, the court said:

> "* * * [T]here must be reasonable ground for apprehending a design to take away life or to do

great bodily harm, and reasonable ground for believing the danger imminent * * *.

"* * * * *

"* * * It [the court] should be careful, however, to give instructions covering all reasonable deductions of fact." 12 Fla at 575, 576.

■ In *Gladden*, a half hour had passed since the altercation, and the victim at the time of his death by his conduct indicated no intention of carrying out his previous threat. Under such circumstances, the court held the trial judge properly refused to submit a self-defense instruction. In the case at bar, by defendant's testimony alone, only seconds had elapsed since the altercation and the alleged threats. The victim's conduct showed no indication of carrying out the threats. Whether a self-defense instruction should be submitted to the jury is a close question. Bearing in mind the admonitions of *Rader* and *Gladden*, that the trial court should give instructions covering all reasonable deductions of fact, we think the jury, under proper instruction, should have determined the facts. As we have already indicated the instruction given in submitting self-defense was defective because it did not include the rule applicable when defendant is in his home; hence, it was not a proper instruction. In a similar situation in *State v. Goodager*, 56 Or 198, supra, the court said at 202:

"* * * We are impelled, therefore, to hold the error prejudicial, necessitating the granting of a new trial."

■ The state has urged upon us the holdings in other Oregon cases, such as *State v. Yee Guck*, 99 Or 231, 195 P 363 (1921), in which it is said:

"* * * It is primary learning in criminal law that self-defense cannot be turned into an instru-

ment of vengeance or reprisal, and that when the danger has passed or ceased to be imminent, the right to kill in resistance ceases * * *." 99 Or at 245-46.

Instruction to this effect should be included, under the evidence in this case, in a comprehensive instruction on self-defense.

Reversed and remanded for a new trial.

**ON PETITION FOR REHEARING**

On respondent's petition for rehearing filed November 8, 1971. Former opinion filed October 19, 1971, 7 Or App 366, 489 P2d 991.

Walter L. Barrie, Assistant Attorney General, Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem, for the petition.

No appearance *contra*.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

The state has earnestly argued for a rehearing. This case was appealed with the limited transcript of only the defendant's testimony. None of the prosecution testimony was transcribed and in the record.

In our earlier opinion we stated whether any self-defense instruction should have been given "is a close question."

We adhere to the belief that whether there was evidence sufficient to present the issue of self-defense was an extremely close one, and we are not prepared to say that with the full transcript before us we would have held it reversible error for the court to have failed to give instructions on self-defense. However, this is not the posture of this case. The close question was resolved at the state's request in favor of instructing the jury on self-defense—in effect, telling the jury that there was sufficient evidence for it to consider the issue. The jury was then given insufficient criteria by way of instruction for resolving the issue— this the state concedes.

This is not a situation in which the instruction

given is so clearly irrelevant that we can affirmatively say that it could not have affected the deliberations of the jury and hence was harmless error.

Petition for rehearing denied.