Argued October 5, affirmed December 17, 1973

STATE OF OREGON, *Respondent*, *v.* WILLIAM
LEWIS STONEBERG (No. 72-3787),
*Appellant.*
517 P2d 333

*J. Marvin Kuhn,* Deputy Public Defender, Salem,
argued the cause for appellant. With him on the brief
was Gary D. Babcock, Public Defender, Salem.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Defendant, William Lewis Stoneberg, was convicted by jury of second degree robbery. ORS 164.405. He appeals that conviction. The sole assignment of error asserts that the jury should have been instructed as to the lesser included offenses of theft and attempted theft. ORS 164.015, 161.405.

On September 13, 1972, Linda Workman, Peter Falkenstein, Michael Tuttirrici and Maria Glaros were residing at 1177 Jefferson Street, Eugene, Oregon. All four residents were awakened in the early morning hours by suspicious noises emanating from outside the house. After noting the unusual sounds and activities, Falkenstein walked to Tuttirrici's bedroom, climbed through the window, ran to a neighbor's home and telephoned the police.

Ms. Workman testified that an individual entered her bedroom, put a gun to her head and ordered her to turn on the lights. After she turned on the lights in the kitchen she saw three unknown persons, later identified as Dennis Williams, Robert O'Neal and William Stoneberg, the defendant. She testified that Williams, the only person armed with a weapon, ordered her to return to the bedroom. She was followed to the bedroom by all three intruders and told to lie on her

stomach. Defendant and Williams then left the bedroom, but they quickly returned with Tuttirrici, pushing him into the room. Defendant and O'Neal left Williams with Ms. Workman and Tuttirrici and returned to the living room.

Williams questioned the victims as to the whereabouts of any guns, drugs or money which might be in the house. Ms. Workman and Tuttirrici both testified that he pointed his gun at them and said he had murdered people before and threatened to shoot both of them. The captives heard defendant and O'Neal discuss taking the speakers located in the living room. Shortly thereafter the police arrived and arrested Williams, O'Neal and defendant.

Ms. Glaros testified that shortly after hearing the strange noises, O'Neal entered her bedroom after breaking down the door. He asked her if she had any money or drugs, and she replied in the negative. Ten minutes later defendant entered her bedroom. When the police arrived, defendant removed his clothes and crawled into bed with Ms. Glaros and told her to tell the police he was her "old man." Upon arrival, Officer Roland Carter ordered defendant to rise and dress himself. Williams and O'Neal were arrested in the living room of the house. Officer Carter subsequently discovered a gun and an ammunition clip near the house in a woodshed from which Williams and O'Neal had, pursuant to police order, just exited. Ms. Workman and Tuttirrici testified that gun was like the gun with which they were threatened.

Defendant's only defense was that he had gone to the house to play a prank on a former occupant who, unknown to defendant, had moved out of the house.

ORS 136.660 provides:

"In all cases, the defendant may be found guilty of any crime, the commission of which is necessarily included in that with which he is charged in the indictment or of an attempt to commit such crime."

■ Essentially, the criminal element which distinguishes theft from robbery is the use or threatened use of force upon another person in the commission of the theft. The overwhelming, uncontradicted evidence presented to the court below was that a gun was used and that the defendant was an accomplice. The state asserts that under such circumstances, no instruction is required to be given with regard to the lesser included offense of theft.

Defendant in his brief contends, based solely on testimony of witnesses other than himself, that he had personally known one Anderson, allegedly a former occupant of the dwelling, and that he had accompanied the other two men into the dwelling only as a prank, not knowing that the former occupant had moved.

The court submitted all three degrees of robbery to the jury. ORS 164.395, 164.405 and 164.415. The court also submitted the charge of first degree burglary to the jury, ORS 164.225, of which defendant was acquitted.

■ With respect to the robbery charge, the defendant requested that the jury be instructed on the lesser included offenses of both degrees of theft and attempted theft. The court refused to give those requested instructions. Before a court instructs on lesser included offenses, there must be some evidence from which the jury can find the defendant guilty of the claimed, included offense. 5 Wharton, Criminal Law and Proce-

dure 286, § 2099 (Anderson 1957). *See also: State, v. Coffman,* 171 Or 166, 171, 136 P2d 687 (1943). An essential element of theft and of attempted theft is an intent to "deprive another of property or to appropriate property to himself or a third person." ORS 164.015.

■ If, as defendant contends, his entry into and his acts within the home were a "prank," then he could not be guilty of either the crime of robbery, which requires that it occur "in the course of committing or attempting to commit theft", ORS 164.395 (1), or of theft or attempted theft itself.

In *State v. Atkins,* 14 Or App 603, 607, 513 P2d 1191 (1973), we said:

"* * * Every criminal offense, with certain exceptions not relevant here, includes a culpable mental state as to each material element. ORS 161.115 (2). * * * *Where defendant's defense would be a defense to all lesser included charges as well as the principal crime charged, the trial court need not instruct on the lesser included offense for this reason alone.* * * *" (Emphasis supplied.)

That rule has equal application here.

■ Finally, we note that the requested theft instructions, in the form submitted, embraced many areas of the theft statutes totally unrelated to any evidence in the case, and, as such, were unnecessarily complex and confusing.

In *State v. Brazeal,* 247 Or 611, 612, 431 P2d 840 (1967), the Supreme Court said:

"The refusal of the trial court to give an instruction requested by the defendant is error only

if the requested instruction correctly states the applicable law. *State v. North,* 238 Or 90, 93, 390 P2d 637, cert. den. 379 US 939, 85 S Ct 344, 13 LEd2d 349 (1964); *State v. Melchor,* 155 Or 225, 227, 62 P2d 829 (1936); *State v. Quartier,* 118 Or 637, 639, 640, 247 P 783 (1926); *State v. Smith,* 43 Or 109, 115, 71 P 973 (1903). The rule applicable in criminal cases is stated in *State v. Quartier,* 118 Or at 639-640, as follows:

" ' * * * A requested instruction is always properly refused, unless it ought to have been given in the very terms in which it was proposed. * * *' "

*See also: State v. Neves,* 246 Or 55, 423 P2d 773 (1967).

The court correctly refused to give the requested instructions.

Affirmed.