STATE, Respondent, v. KENSTLER, et al., Appellants.

(184 N. W. 259.)

(File No. 4915.  Opinion filed August 31, 1921.)

1. **Criminal Law—Assault With Dangerous Weapon With Intent to do Bodily Harm—Hostility of Complaining Witness, Causes of, Eliciting on Cross Examination—Error—Rule Stated.**

Where, in a criminal prosecution for assault with a dangerous weapon with intent to do great bodily harm and without justifiable or excusable cause, C, state's sole witness, having testified to circumstances which were in part contradicted by one of defendants F. K., was asked on cross-examination whether there had not been much bad blood existing between him and P. K. (who, witness testified, had joined in the assault,) for at least two years before this trouble, and arising from difficulties over range matters, and whether C had not replevined stock taken by P. K. and got away with it without paying damages, and whether he hadn't caused P. K. to be arrested for riding and injuring a horse, and whether he did not two days before the alleged assault say to one D he was going out to K's place to see if he could find witness's horses and that if he didn't find them he was going to make F. K. find them, "and was going there heeled;" held, that trial court erred in sustaining objection to said questions; since evidence of relations existing between accused and the person injured prior to the crime is admissible, while as a rule evidence of relations existing between accused and persons not interested in or injured by the

crime is irrelevant and inadmissible.   Hostility of a witness to
a party against whom he is called may always be shown.

2.   Same—Time Covered by Question, Whether 2 Years Too Re-
     mote—Rule Requiring Continued Hostility.

In determining whether said question put to complaining
witness as to whether bad blood existed between him and P. K.
"for at least 2 years" before the alleged assault in question
was proper cross examination, held, that it is competent to
show state of feeling of a witness when called to testify for
purpose of giving jury all facts necessary to a full and fair
consideration of his evidence and enable them to determine
degree of credit to be accorded thereto; and as regards the
time when such hostility must appear in order to render evi-
dence admissible, no hard and fast rule can be laid down; if
hostility arose a considerable period prior to date of trial, that
is no reason for exclusion of the evidence, if the hostility and
prejudice had continued; but it is necessary that it appear
either that hostility existed at time of trial, or has arisen so
recently that it can be presumed to continue.

3.   Criminal Law—Evidence—Cross Examination of Witness, Scope
     of, Sound Discretion Re, Rule.

The correct rule concerning the extent to which cross-exam-
ination of a witness may go is that as to facts otherwise im-
material, for the purpose of questioning his bias and credibility,
it is ordinarily within the discretion of the court, no rule of
law being violated; but such rule of law is violated by exclus-
ion of evidence which is both material and relevant; and court's
discretion extends no further than to see to it that trials are
kept within reasonable bounds as to time they occupy and
range they cover.

4.   Same—Cross Examination—Slightly Relevant, Whether Admis-
     sible—Judicial Discretion Re—Justification of Hostility, Evi-
     dence Rejected.

The relevancy of testimony elicited on cross-examination of a
witness may be so slight and inconsequent that to receive it
would be to distract attention that should be concentrated on
vital points and to confuse rather than illuminate the case;
and in determining whether particular testimony offered belongs
to this category, certain discretion is necessarily vested in trial
court; and held, that a witness's personal ill-will toward a party
to the action evidences bias which may affect credibility, and
the right to elicit the fact on cross-examination may not often
be denied without prejudicial abuse of discretion; and court
should limit cross-examination to disclosure of such facts only
as may show hostility, and reject matters pertinent to justifi-
cation of witness's hostility, since it is existence of the feeling

and not the right or wrong in the transaction which occasions it that is material.

**5. Same—Defendant's Evidence Showing State's Witness's Hostility, Erroneous Rejection of.**

The rejection of the testimony of one of 3 defendants in a criminal prosecution intending to show hostility on the part of complaining witness toward another defendant jointly charged with a criminal assault, was prejudicial error.

Whiting, J., not sitting.

The defendants John Kenstler, Fritz Kenstler, and Arthur Kenstler were convicted of the crime of assault with a dangerous weapon with intent to do great bodily harm and without justifiable or excusable cause, and they appeal. Reversed.

*E. H. Leaton,* and *Dan McCutcheon,* for Appellants.

*Byron S. Payne,* Attorney General, and *Vernon R. Sickel,* Assistant Attorney General, for Respondent.

(1) To point one of the opinion, Appellants cited: Wharton's Crim. Ev. Vol. 1, 10th ed., page 988, 1004; Jones on Ev. 2nd ed. Sec. 828; State v. Mulch, 17 S. D. 323; Wigmore on Ev. Vol. 2, Sec. 943, 1368; State v. Malberg (N. D.) 105 N. W. 614.

Respondent cited: 1 Greenl. on Ev. Sec. 450; Richardson v. Gage (S. D.) 133 N. W. 692, Ann. Cas. 1914B, 534; State v. Frazer (S. D.) 121 N. W. 190.

SMITH, J. Appellants were convicted in the circuit court of Butte county upon an information charging them with the crime of assault with a dangerous weapon, with intent to do great bodily harm, and without justifiable or excusable cause, upon one Calhoun. Appellants and Calhoun were neighboring ranchers in Butte county. It appears that appellants had in their possession certain horses, taken by them as trespassing animals, belonging to Calhoun. Their residences were 7 or 8 miles apart. On October 29, 1919, Calhoun left his home, on horseback, and went to the home of the defendants, to see about the horses. Calhoun was the sole witness for the state. He testified that when he arrived at the corral he was almost immediately assaulted by the defendant Fritz Kenstler; that Arthur Kenstler gave Fritz a club, with which Fritz struck Calhoun a number of times, breaking his arm; and that Paul Kenstler came up and joined in the assault.

Fritz Kenstler testified that Calhoun rode up to the corral

and motioned him to come out, and when he got within about 10 feet of him Calhoun asked him about the horses, at the same time applying an opprobrious epithet; that Calhoun jumped off his horse and started for him; that Fritz ran toward the corral, but stopped and picked up a stick; that Calhoun struck at him, and he then struck Calhoun with the stick; that at the time the difficulty occurred his mother, father, and brother were working in another part of the corral and did not see the difficulty.

Upon cross-examination, appellants' counsel asked Calhoun whether, as a matter of fact, there had not been a good deal of bad blood existing between him and Paul Kenstler for at least two years before this last trouble, arising from difficulties over the range which both were using, and whether Calhoun had not replevined stock taken up by Kenstler, and got away with it without paying damages, and whether he had not caused Paul Kenstler to be arrested for riding and injuring a horse. To this class of evidence objections were interposed by the state, and sustained by the court, and errors are assigned.

Calhoun was also asked on cross-examination whether, about two days before the trouble, at a certain pool hall, he did not say to one Driscoll that he was going out to Kenstler's place to see if he could find the horses, and if he did not find them he was going to make Fritz find them, and was going there heeled. Objections sustained, and error assigned.

[1] We are of the view that these rulings were erroneous and prejudicial.

"Evidence of the relations existing between accused and the person injured prior to the crime is admissible; but as a rule evidence of the relations existing between accused and persons not interested in or injured by the crime is irrelevant and inadmissible." 16 Corp Juris, 546 (§ 1042.)

"Hostility of a witness to a party against whom he is called may always be shown." State v. Scott, 37 N. D. 105, 163 N. W. 810.

[2] Respondent urges that the time covered by the question, a period of two years or more, involves transactions too remote to be relevant to the issue.

"It is competent to show the state of feeling of a witness when called to testify for the purpose of giving the jury all the

29—Vol. 44, S. D.

facts necessary to a full and fair consideration of his evidence and enable them to determine the degree of credit to be accorded thereto." 28 R. C. L. 615 (§ 204.)

"As to the time when the hostility of a witness to one of the parties must appear in order to make the evidence admissible, no hard and fast rule can be laid down. If the hostility arose a considerable period prior to the day of the trial, this would appear to be no reason for the exclusion of the evidence, if the hostility and prejudice had continued. But it would seem to be necessary to make it appear either that the hostility exists at the time of the trial, or that it has arisen so recently that it can be presumed to continue. Id. 617 (§ 205.)

[3, 4] It is also urged by respondent that the extent of the cross-examination is within the sound discretion of the trial court, and unless abused the judgment will not be disturbed on account of such rulings. The correct rule, however, is stated in a note to section 450, 1 Greenleaf on Evidence:

"The extent to which a witness may be cross-examined as to facts otherwise immaterial for the purpose of testing his bias and credibility is ordinarily within the discretion of the court, no rule of law being violated." Consaul v. Sheldon, 35 Neb. 247, 52 N. W. 1104.

Certainly a rule of law is violated by the exclusion of evidence which is both material and relevant. Evidence which is competent and relevant is admissible, the courts exercising no further discretionary power than to see to it that trials are kept within reasonable bounds as to the time they occupy and the range they cover.

"Evidence may be relevant, and yet its relevancy may be so slight and inconsequential that to receive it would be to distract attention that ought to be concentrated on what bears directly on vital points, and to confuse rather than to illuminate the case. In determining whether any particular testimony offered belongs to this category, a certain discretion is necessarily vested in the trial court." 16 Corp. Juris, 561 (§ 1086, F.)

In Richardson v. Gage, 28 S. D. 390, 133 N. W. 692, Ann. Cas. 1914B, 534, this court held that:

"Personal ill will on the part of a witness toward a party to the action is evidence of bias which may affect credibility, and the

right to elicit the fact on cross-examination may· not often be denied without an abuse of discretion which would· be deemed prejudicial to the litigants. * * * In such cases the proper scope for the exercise of discretion by the trial court is in limiting the cross-examination to a disclosure of such facts only as may show the existence of hostility, and rejecting any matters which might be pertinent only to a justification of hostility on the part of the witness, for it is the existence of the feeling which is material, and not the right or wrong in the transaction which occasions it."

[5] The rejection of Kenstler's evidence tending to show hostility on the part of Calhoun was also prejudicial error, within the ruling of this court in State v. Smith, 183 N. W. 873.

We are of the view that the rulings of the trial court were erreoneous and prejudicial, and that the judgment and order of the trial court must be reversed.

· WHITING, J., not sitting.