GREATREAKS
v.
**UNITED STATES.**
No. 13964.

United States Court of Appeals
Ninth Circuit.
March 26, 1954.

McCutcheon, Nesbett & Rader, Buell A. Nesbett, Anchorage, Alaska, for appellant.

William T. Plummer, U. S. Atty., Lynn W. Kirkland, Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before BONE, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

The appellant was convicted of the crime of offering money to a police officer with intent to influence the latter's official conduct as a member of the Anchorage Police Department. Alaska Compiled Laws Ann.1949, § 65–7–4. Upon this appeal appellant first argues that the court was in error in rejecting certain evidence offered for the purpose of showing the bias and hostility of the prosecution's principal witness. He also contends that the court erred in refusing certain instructions on his defense of entrapment.

At the outset we note that appellant has wholly disregarded the requirements of our rules relating to the inclusion of a specification of errors in his brief.[1]

The police officer in question, one Holmwood, was the principal witness against the defendant. He testified that defendant had approached him with an inquiry as to whether arrangements could be made by one Berg to carry on a poker game in the City of Anchorage without interruption by the police, and that in the course of subsequent negotiations the defendant and Berg offered Holmwood and another police officer payments of $500 per month if they would arrange to permit the running of the game. Upon cross-examination of Holmwood, it was developed that three years previously he and the defendant had been neighbors and acquaintances in the Town of Fairbanks. Holmwood denied that he had ever made any threats against Greatreaks or had any trouble with him. He particularly denied having had a fist fight in Fairbanks with Greatreaks either in connection with an argument over Greatreaks' wife or otherwise.

In the course of the defense appellant sought to prove by his own testimony and by that of other witnesses that at the time Holmwood and defendant lived as neighbors at Fairbanks, Holmwood became very hostile toward appellant. In the colloquy between court and counsel which ensued, the court announced that counsel for the defense would not be permitted to make inquiry as to what had happened between Holmwood and Greatreaks or as to any hostility which occurred between them three years prior to the date of the trial and at Fairbanks. The court alluded to the testimony of the defendant that he had forgiven Holmwood after the parties had come to Anchorage and said that counsel would be confined to proof of hostility at the time Holmwood testified, and that proof of threats on the part of Holmwood against Greatreaks occurring at Fairbanks would not be permitted.

One Vern Cavell, called as a witness on behalf of the defendant, testified that he had previously lived at Fairbanks in the same auto court where Holmwood and Greatreaks were then living. He testified that for a period of time the relationship between Holmwood and Greatreaks was friendly. The question was then asked "Then what happened?" The court intervened and refused to permit the question to be answered on the ground that it was too remote, in the absence of a prior showing of present animosity between Holmwood and the defendant.

The defendant offered to prove by his wife that at the time mentioned, in Fairbanks, Holmwood had committed the crime of rape upon her person; that she told her husband, the defendant, about this, and that he then gave Holmwood a severe beating. Defendant also offered to testify that on the occasion referred

1. Rule 18(d) provides in part: " * * * When the error alleged is to the admission or rejection of evidence the specification shall quote the grounds urged at the trial for the objection and the full substance of the evidence admitted or rejected, and refer to the page number in the printed or typewritten transcript where the same may be found. When the error alleged is to the charge of the court, the specification shall set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused, together with the grounds of the objections urged at the trial."

to he had been informed by his wife that Holmwood had raped her, that he beat Holmwood in the presence of divers persons and that Holmwood then threatened defendant that he would get even with him. Defendant offered to prove by another witness who was then present that he saw the defendant give Holmwood that beating and heard Holmwood make threats to get even.

 If we assume that the question of the rejection of the offered testimony is properly before us, and that the usual rule that an offer of proof must be made has application here, there might well be some doubt as to whether the formal offers of proof as made were sufficient to put the court in error. The propriety of showing the bias of a witness not only by cross-examination but by extrinsic testimony of other witnesses is well settled.[2] And where proof of bias or hostility is offered through evidence of the existence of a quarrel the trial court may in its discretion exclude the details of the quarrel or other conduct while limiting the proof to the existence of ill will and unfriendly feelings of the witness, thus avoiding the trial of a collateral issue as to who was in the right when the quarrel occurred.[3]

 If appellant was required to make an offer of proof it may be that in incorporating in his offer not only the proposed proof of the beating and the threats of reprisal but also the details

which led to the beating, the appellant failed properly to preserve his record. See Lane v. United States, 9 Cir., 142 F.2d 249, 253. We think, however, that when the court announced in advance that it would not receive evidence of any quarrel or hostility occurring three years prior to the date of trial, the appellant was thereby relieved of the necessity of making any further offer of proof. As stated by Mr. Wigmore: "But a specific offer of evidence is not needed where an *entire class of evidence* has been in advance formally declared inadmissible by the trial Court during preliminary argument or colloquy; for the Court's ruling relates forward to all possible offers of such evidence and renders them needless. Moreover, after such a ruling, the persistence of counsel in making or repeating such offers may be treated as improper attempts to get before the jury the effect of such evidence."[4]

 We think that it is plain that whether a witness who was beaten by the defendant three years previously and who threatened to get even was still biased against the defendant at the time of the trial would be a matter for the jury to determine. It is common knowledge that feelings of hostility once shown to exist may well continue for a considerable period of time.[5] This is a matter for the jury to weigh in performing their function of determining the credibility of the witnesses, and it was

2. Wigmore on Evidence, 3d Ed., § 948.

3. Meeks v. United States, 9 Cir., 179 F. 2d 319, 321. See Wigmore on Evidence, 3d Ed., § 951.

4. Wigmore on Evidence, 3d Ed., § 17. During the extensive colloquy between court and counsel the defendant's purpose was repeatedly made clear. Thus when the questioning of the witness Cavell was stopped by the court counsel for defendant stated: "I am now going to show the jury that his attitude was not only unfriendly but very hostile because of a situation that occurred in Fairbanks in connection with the defendant's wife." When the defendant was on the stand his counsel stated: "There is other evidence of hostility and I can prove, if Your Honor will allow me to connect up the

chain of events, that the Government's star witness had a very poisonous attitude of hostility," to which the court replied: "You don't have to prove any more than hostility at the time of the trial. You don't have to go back to Fairbanks. I'm just trying to keep this case simple and not introduce so many collateral issues here before the jury. There is no burden resting on you to prove continuity of hostility back for three years. All you need to do is to prove hostility at the time Holmwood testified. That is enough and you can argue from that, that he was influenced by his hostility in giving his testimony."

5. It would be for the jury to say whether, even if Greatreaks forgave Holmwood, Holmwood had forgiven Greatreaks.

unquestionably error for the court to place such time limit upon the offered proof of bias.

■ The question remains whether it is now incumbent upon us to notice such error under Rule 52(b) of the Rules of Criminal Procedure, 18 U.S.C.A. relating to plain errors affecting substantial rights notwithstanding appellant's failure to comply with our rules relating to how such an error should be specified. It seems to us that the finding of guilty by the jury may well have been based upon its crediting the testimony of Holmwood. Although the other police officer testified to substantially the same facts tending to show the defendant's guilt, yet we cannot avoid the conclusion that the court's refusal to permit this proof of bias substantially prejudiced the appellant and operated to deprive him of a fair trial.

Since the cause must be remanded for a new trial we notice briefly appellant's other contention that the court should have given certain instructions relating to entrapment.

The defendant's own testimony was that at the request of Berg, a business associate of his, he approached Holmwood and made an inquiry as to whether it would be possible for Berg to make arrangements to operate a poker game in the City of Anchorage; that Holmwood told him that he, Holmwood, did not know, but that he would check and find out. That shortly thereafter defendant again talked to Holmwood who said: "I think I got it fixed up where your friend can run a poker game." Following that, defendant testified, Holmwood and another police officer met Berg and defendant at the latter's office at which time Berg said he wanted to run a poker game "but they wanted $500 right then and there and Berg said he would pay them no $500 then but he finally agreed that in case he run a poker game during the week that he would pay $500 the following Monday". Upon cross-examination the defendant testified:

"Q. What did you think about this $500 offer? A. It was my—I figured that it would go to the police, that that would be what they would charge for letting him operate.

"Q. You suspected that? A. Yes.

"Q. You heard about things like that before? A. Yes, I have. In the first place, he had asked. He wanted to operate legally and he was willing to pay anything within reason if he could operate legally.

"Q. What do you mean 'operate legally'? A. With the police's permission."

■ It seems probable that a fair interpretation of Greatreaks' testimony is that he was describing the commission of a crime by Berg and that according to his own testimony he was aiding and abetting in its commission, and hence was himself guilty of the same offense.[6] But be that as it may, it is plain that the defendant's own testimony negatives any entrapment. Evidence of entrapment is entirely lacking from this record and hence there was no occasion for charging the jury with respect to any such defense. United States v. Pisano, 7 Cir., 193 F.2d 355, 361, 31 A.L.R.2d 409.

The judgment is reversed and the cause is remanded for a new trial.

6. § 65-3-2, A.C.L.A. 1949: "Principals. That all persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the crime or aid and abet in its commission, though not present, are principals, and to be tried and punished as such."