[Civ. No. 25849. Second Dist., Div. One. Apr. 17, 1962.]

VIRGIL WILMOTH EYE, Plaintiff and Respondent, v. KAFER, INC., Defendant and Appellant.

Schell & Delamer, Richard B. Goethals and Earle K. Stanton for Defendant and Appellant.

Ross, Price & Rikalo and James R. Ross for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment in favor of the plaintiff in a case involving a beating administered to plaintiff by a representative of the defendant corporation.

Some of the facts as developed by witnesses and other evidence is as follows: the defendant corporation ran and operated the Crossbow Inn, which was a public restaurant with two bars and a dancing space. On the night of December 22d and early morning of December 23, 1957, there were several customers in the establishment. The plaintiff, Eye, was what might be termed a regular customer of the place. Anthony J. Ferra, Peter G. Katilavas and Amos Emery Yeigh, were the owners and officers of the defendant corporation. Katilavas was in charge of the inn on the occasion in question. He went upstairs to his office about midnight and remained there behind locked doors until approximately 1:30 a. m., when he was summoned by a waitress to come downstairs. Apparently when Katilavas had left to go upstairs a Robert Polovina was behind the bar serving drinks and collecting money. It was estimated that there were from 10 to 25 people in the place of business from midnight until 1:30 a. m. It was Katilavas' testimony that he left no one in charge of the bar when he absented himself to go upstairs, that "friends" were permitted to go behind the bar, mix their own drinks and serve other customers who were "friends." He further stated that he did not know that Polovina was tending bar during the one and one-half hours that he, Katilavas, was absent. Samuel James Stallings, Jr., was at the place of business on the night in question. It was alleged in the complaint that Stallings was an employee, agent or servant of the corporation on the occasion. Two women were seated at the bar and conversed with the plaintiff. One of the women asked plaintiff to watch her purse while she went to dance. The plaintiff apparently went to the men's restroom and took with him the lady's purse. Polovina and Stallings pursued the plaintiff into the men's room. There Stallings severely beat the plaintiff and further beat him again outside of the toilet room. It would appear to be the argument of the defendant that the plaintiff was stealing the purse, yet the

owner thereof gave no testimony that her purse was stolen, did not direct that anyone go after the purse, and admitted that nothing was taken.

Stallings served drinks and collected money therefor on the night in question and on previous nights he had likewise pursued such a course. Yeigh stated in effect that Stallings was an employee of the inn during a time in December 1957. A payroll check dated December 28, 1957 (five days after the episode in dispute), drawn by the corporation and payable to Stallings showed appropriate deductions for the state and federal withholding taxes. This check was delivered to the plaintiff by Yeigh. A police officer testified that Katilavas had told him with reference to whether Stallings was working at the time in question that ". . . Sam Stallings was employed by the Crossbow to work off a tab, a bill he owed for drinks and food."

Plaintiff apparently was severely beaten and suffered serious injuries. Doctors testified in his behalf and even though the plaintiff was examined by a doctor selected by the appellant, the appellant did not produce such doctor to testify as to the condition of Eye. Medical and hospital bills of plaintiff amounted to approximately $4,468.99. His loss of earnings was approximately $3,500.

Stallings originally was sued as a defendant; however the service of process on him was quashed and at the time of the trial the corporation was the only defendant. Stallings did not appear as a witness.

The jury returned a unanimous verdict in favor of the plaintiff for the sum of $50,000.

Appellant asserts among other things that Stallings was not an employee or agent of the corporation and therefore the defendant was not responsible for his action; that even if Stallings was an employee the altercation was not within the scope of employment; that reversible error was committed in excluding evidence to show bias and prejudice of a certain witness; that the business records of defendant were improperly excluded from evidence and that the trial court should have granted the motion for a new trial upon the grounds of insufficiency of the evidence, excessive damages and errors at law.

There is no doubt a great deal of testimony in the record which, had it been believed, would have been sufficient to establish that Stallings was not an employee or agent of the defendant. The jury, however, obviously did not believe the

defendant's witnesses in all matters. There is evidence (which the jury obviously took as being the truth) which establishes that Stallings was an employee or agent of the corporation at the times in question. It is not the responsibility or prerogative of this court to determine the credibility of the witnesses. (See *Primm* v. *Primm*, 46 Cal.2d 690 [299 P.2d 231]; *Nichols* v. *Mitchell*, 32 Cal.2d 598 [197 P.2d 550]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183]; *People* v. *Blankenship*, 171 Cal.App.2d 66 [340 P.2d 282]; *Sullivan* v. *Dunnigan*, 171 Cal.App.2d 662, 665 [341 P.2d 404]; *People* v. *Barnett*, 159 Cal.App.2d 22, 29 [323 P.2d 96].)

An inference to the effect that Stallings was an employee of the corporation can be drawn from the statement of Katilavas (an officer of the corporation and the person in charge of the inn on the night in question) to the police officer to the effect that Stallings "was employed by the Crossbow to work off a tab, a bill that he owed for drinks and food." (See *Robinson* v. *George*, 16 Cal.2d 238 [105 P.2d 914].)

One of the tests of whether an employer-employee relationship exists is whether there is the right of control. In 32 California Jurisprudence 2d 406, section 9, it is stated: "The right of control is the essential characteristic of the employment relationship. The test, however, is whether the employee is subject to control, not whether such control is being exercised at any particular moment, though control is not always sufficient by itself to establish a master and servant relationship. To establish the relationship of master and servant the control must extend not just to the employment to which the contract relates, but to all its details. The test requires complete control, or the unqualified right to direct and control the details of the work or the means by which the work is to be accomplished. The existence of the right of control is often tested by determining whether, if instructions were given, they would have to be obeyed."

It was not absolutely necessary for the plaintiff to establish that Stallings received payment in dollars for his services. The evidence indicated that Stallings served drinks, collected money and did other work in and about the place of business and whether it was for a stated sum in money is not the crucial point involved. See *Bonetti* v. *Double Play Tavern*, 126 Cal.App.2d Supp. 848 [274 P.2d 751] and California Labor Code section 350 to the effect that it is not necessary that an employee receive monetary compensation.

Furthermore the appellant could have been held responsible under the theory of an ostensible agency. See—American Law Reports, second series 984, 992, where in quoting from *Haluptzok* v. *Great Northern R. R. Co.,* 55 Minn. 446 [57 N.W. 144]; it is said: " 'It is enough to render the master liable if the person causing the injury was in fact rendering service for him by his consent, express or implied.' " From the evidence the jury could well have inferred that Katilavas when he went upstairs for an hour and a half expressly or impliedly gave consent to Stallings to perform the duties or services of a bartender.

There can be but little doubt that the evidence is clear that Polovina was an employee at the time in question. Polovina, in answering the question at the time of trial "And then you yelled to Samuel Stallings to get the purse" testified, "I yelled to the effect, I said 'somebody has got that woman's purse.' " The question was then asked, "And you yelled at Sam Stallings who was right there?" and Polovina answered, "He was standing there. I couldn't say if I yelled at him or not."

In *Bank of Calif.* v. *Western Union Telegraph Co.,* 52 Cal. 280, it was held in effect that if an agent employs a subagent without authority of the employer, the employer nevertheless is liable for the willful fraud of the subagent. In this particular case it is interesting to note that Polovina apparently did nothing to stop the beating which was being applied to Eye by Stallings.

It is a question of fact from the evidence and particular circumstances of each case whether an employee was acting in the course of his employment at the time of a particular episode. (See *De Mirjian* v. *Ideal Heating Corp.,* 129 Cal.App.2d 758 [278 P.2d 114].) In this case the evidence in our opinion is sufficient to establish that Stallings was in the general course of his employment at the time of his beating of the plaintiff. (See *De Rosier* v. *Crow,* 184 Cal.App.2d 476 [7 Cal.Rptr. 540]; *Haworth* v. *Elliott,* 67 Cal.App.2d 77 [153 P.2d 804].)

During the trial a Rosemary Sexton testified for the plaintiff. She stated in part that Stallings had told her and her husband that he was a partner or part owner of the place of business, and that he had been fired; furthermore that he had brought drinks to her and said, "This is on the house." On cross-examination the following occurred:

"MR. GOETHALS: I intended to ask, your Honor, if she was

in attendance of [*sic*] the hearing in the Municipal Court involving one Samuel Stallings.

"THE COURT: Are you going to mention the charges?

"MR. GOETHALS: I am going to ask if she was a complainant in regard to the charges?

"MR. ROSS: That has no materiality in this case. That is exactly what I was objecting to.

"THE COURT: You need testimony to show she was a complainant.

"MR. GOETHALS: Forcible rape, your Honor.

"MR. ROSS: At a subsequent time two weeks later. He is trying to bind these two matters together, and I am objecting to any reference to it.

"THE COURT: He probably can show as far as bias is concerned, so long as there is any prejudice of this witness against Stallings. In this case has this anything to do with——

MR. GOETHALS: I don't intend to go into the forcible rape charge.

"She indicated by her testimony she is trying to make Mr. Stallings a partner. The bias and prejudice rubs off on Kafer, Incorporated. We intend to show only by the question that she brought charges against Mr. Stallings and appeared previously as a witness against him. I think that is bias and prejudice against Kafer, Incorporated.

". . . . . . . . . . . . .

"THE COURT: Let us make your statement again for the record. If it is what I think it is, I will deny it.

"MR. GOETHALS: I am making a statement, your Honor, that this particular witness brought charges of forcible rape against Mr. Samuel Stallings, Jr., at a preliminary hearing, and it was had at the Municipal Court before the Honorable Francis Cochran. He was held to answer both on assault by means of force and on forcible rape. He was tried before the Honorable Stanley Mosk and he was acquitted on the charge this lady brought against him.

"THE COURT: What do you intend to show, that she was prejudiced?

"MR. GOETHALS: Because she is prejudiced against Stallings and it is her effort to make Stallings a party to Kafer, Incorporated. I think there is broad latitude.

"THE COURT: The objection of the plaintiff will be sustained."

It is to be remembered in this case that Stallings was not a party to the action at the time of the trial. ▉ It is set

forth in 74 American Law Reports, Annotation, 1154, 1157, as follows:

" ' "Personal ill will on the part of a witness toward a *party* [emphasis added] to the action," says the South Dakota court in a well-considered opinion (*Richardson* v. *Gage,* 28 S.D. 390 [133 N.W. 692, Ann.Cas. 1914B 534]), "is evidence of bias which may affect credibility, and the right to elicit the fact on cross-examination may not often be denied without an abuse of discretion which would be deemed prejudicial to the *litigant* [emphasis added] . . . In such cases, the proper scope for the exercise of discretion by the trial court is in limiting the cross-examination to a disclosure of such facts only as may show the existence of hostility, and rejecting any matters which might be pertinent only to a justification of hostility on the part of the witness, for it is the existence of the feeling which is material, and not the right or wrong in the transaction which occasions it." ' "

At page 1161 it continues as follows: "Especially, in such cases, questions which relate to scandalous or other matter likely to affect a jury improperly would seem clearly to have no place in a fair investigation of issues."

In 54 California Jurisprudence 2d 507, Witnesses, section 125, it is said: "It is within the trial court's discretion to limit impeaching testimony within reasonable bounds. And the extent of cross-examination on any fact that tends to impeach the credibility of a witness rests largely in the discretion of the trial court. In the exercise of its discretion, the court should consider the rule that evidence merely tending to degrade the witness unnecessarily should be excluded."

In *Estate of Martin* v. *Savings Union Bank & Trust Co.,* 170 Cal. 657, 671 [151 P. 138], it is said: " 'It is competent to prove enmity or unfriendliness of a witness to a party against whom he testifies, . . . *But, the provable fact is the state of the witness' feelings, not the cause of it.* That would probably lead to a multiplication of issues, and confusion of the minds of the jurors.' " (Emphasis added.)

In *People* v. *Atchley,* 53 Cal.2d 160, 172 [346 P.2d 764], the court stated: "The trial court had discretion to foreclose further inquiry along that line, even for purposes of impeachment."

Code of Civil Procedure section 1868 provides as follows: "Evidence confined to material allegation. Evidence must correspond with the substance of the material allegations, and be relevant to the question in dispute. Collateral questions

must therefore be avoided. It is, however, within the *discretion* of the Court to permit inquiry into a collateral fact, when such fact is *directly connected* with the question in dispute, and is essential to its proper determination, or when it affects the credibility of a witness." (Emphasis added.)

 The judge in this case simply foreclosed the appellant from pursuing the matter of the nature of the charges in question, namely the fact that forcible rape was involved. Furthermore there was nothing to show bias against the defendant corporation, which was the only party litigant at the time of trial. In other words, in this case the essential part of the testimony of the witness was to show her state of mind—that she had been a complaining witness against Stallings in a criminal proceeding in which he was acquitted and not the fact that there was a forcible rape charge which would have had no bearing upon the credibility of the witness under the circumstances. The trial judge properly ruled that the question of the forcible rape was a collateral issue immaterial and irrelevant to show hostility and prejudice of the witness against Stallings.

It is apparent that appellant's trial counsel was attempting to get before the jury inadmissible evidence of collateral facts with reference to the witness' chastity or moral conduct which were not relevant to the issues before the court at the time. It was in the nature of a "covert insinuation." (See *People* v. *Wyatt*, 11 Cal.App. 120, 121 [104 P. 12]. See also *People* v. *Hendrix*, 192 Cal. 441, 449 [221 P. 349]; *People* v. *Johnson*, 106 Cal. 289, 293, 294 [39 P. 622]; *People* v. *Russell*, 80 Cal.App. 243, 246 [251 P. 699].)

Hostility toward a witness as distinguished from hostility toward a party is discussed in *People* v. *Vanderburg*, 184 Cal. App.2d 33, 41 [7 Cal.Rptr. 287], and *People* v. *Jennings*, 142 Cal.App.2d 160, 163-164 [298 P.2d 56].

Furthermore, the record would seem to indicate that appellant's trial counsel was attempting to show that there was bias of the witness at the time of the filing of the criminal charge. The trial with which we are concerned took place several years afterward. The hostility with which the law is concerned is that as of the time the witness is testifying. Volume 58, American Jurisprudence 383 (Witnesses, § 707), sets forth as follows:

"The fact that the hostility arose a considerable period prior to the date of the trial would appear to be no reason for the exclusion of the evidence if the hostility and prejudice

had continued. But it would seem to be necessary to make it appear either that the hostility exists at the time of the trial, or that it arose so recently that it can be assumed to continue." (See also *Salle* v. *Mayer,* 91 Cal. 165, 167-168 [27 P. 513].)

 Appellant at the trial offered into evidence certain of its business records. The offer was refused. Section 1953f, Code of Civil Procedure, reads as follows: "A record ·of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

 It is to be noted that a record (even assuming that it meets the specified conditions as set forth in the statute) is not necessarily entitled to admission into evidence as a matter of law, but only ". . . if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." (See *People* v. *Grayson,* 172 Cal.App.2d 372 [341 P.2d 820] ; *Gough* v. *Security Trust & Savings Bank,* 162 Cal.App.2d 90, 93 [327 P.2d 555].)

 The offer of proof and the related foundation for the admission of the records in question into evidence was deficient. The records consisted of alleged copies of unemployment insurance returns, the original of which was with the Department of Employment. The foundation consisted of testimony of Katilavas to the effect that he got the records from a certified public accountant; that the records were prepared by a bookkeeper. There was no testimony as to the mode of preparation, sources of information for the preparation, or when they were prepared. The judge properly exercised his discretion and refused to admit the records in question.

At the time of the motion for a new trial the judge considered the evidence and determined in effect that the evidence was sufficient to sustain the judgment. The judge considered the amount of damages allowed to the plaintiff. The evidence with reference to the extent and nature of the injuries to Eye was practically uncontradicted. The court upon a motion for a new trial will grant a new trial on the ground of excessive damages where it appears that such damages have been given under the influence of passion or prejudice. (Code Civ.

Proc., § 657, subd. 5.) The judge in this case apparently reviewed the record and found that the judgment was proper in all respects and denied the motion for a new trial. We are unable to find where in any respect his discretion was abused. (*Tankersley* v. *Low & Watson Constr. Co.*, 166 Cal. App.2d 815 [333 P.2d 765]; *McChristian* v. *Popkin*, 75 Cal. App.2d 249 [171 P.2d 85].)

We find no reversible error in the record.

Judgment affirmed.

Wood, P. J., and Lillie, J., concurred.