Walter WYNN, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20723.

United States Court of Appeals
District of Columbia Circuit.

Argued July 14, 1967.

Decided Nov. 16, 1967.

Tamm, Circuit Judge, dissented.

———◆———

Mr. Jerome B. Libin, Washington, D. C. (appointed by this court) for appellant.

Mr. Robert S. Brady, Sp. Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and William L. Davis, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and TAMM and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Following the discovery on Thanksgiving morning, November 25, 1965, that a checkwriter and a calculator had been burglarized from a plumbing shop, John W. Robinson, a neighbor, reported to police that somewhat earlier on that morning he had seen appellant, carrying a tabulator [1] on his shoulder, exit from the establishment by the back door.[2] Ap-

---

1. The evidence revealed that the stolen calculator and the tabulator appellant allegedly carried were similar in color, but did not otherwise tend to establish their identity.

2. The record does not indubitably pinpoint the time at which Robinson conveyed this information to the police. The Government contends that it was done on Thanskgiving morning; appellant argues that it could have been as much as three weeks later. Resolution of this controversy is unnecessary to our decision.

pellant was subsequently indicted for housebreaking and larceny,[3] and Robinson became the Government's principal witness at the trial. The jury—obviously, the record discloses, on Robinson's testimony—found appellant guilty as charged.

On his direct examination, Robinson identified appellant as the person he had observed departing the victimized premises with the tabulator. This identification he aided by testimony that he had known appellant as "Cutie Boy" for nearly two years because he lived with Louise Gaither, a tenant in Robinson's rooming house. On cross-examination, Robinson denied a previous argument with appellant over the alleged theft of some whiskey and an accompanying statement that he would "get even" with appellant for that theft.

■ Appellant testified that he spent the night the offenses occurred with Mrs. Gaither, but she was not called as a·witness. In response to his counsel's questions, he also said that about three days after Thanksgiving Robinson had accused him of stealing some whiskey, and as he was relating the ensuing events the Government objected. At a bench conference then convened, defense counsel stated that his objective was a showing that Robinson was biased against appellant. The trial judge sustained the objection, pointing out that the testimony related to a happening subsequent to Robinson's report to the police,[4] and rul-

ing that post-Thanksgiving incidents could not be developed. The judge also barred comment to the jury on occurrences after the date of the offenses.

This, we hold, was error and, finding resulting prejudice to appellant, we reverse his conviction and remand the case for a new trial. And with this disposition required, we explore, for the guidance of the District Court and counsel, another problem likely to recur on the retrial.

### I

Appellant's cross-examinational hypothesis, communicated at the bench conference, was that Robinson's testimony was a manifestation of bias against appellant. His counsel's effort to prove an altercation over the allegedly stolen whiskey was well calculated to support that theory. We think it clear that, for the purpose announced, whether or not for any other, appellant was entitled to lay the episode bare.

■■ "Bias of a witness," we have said, "is always relevant." [5] A party's right to undertake demonstration of the bias of his adversary's witness coexists on the same plane with the adversary's prerogative to use the witness.[6] Such an effort may properly solicit over a wide range any information of potential value to the trier of fact in the assessment of credibility.[7] A previous quarrel between the witness and the party testified against readily suggests the possibility

3. D.C.Code §§ 22–1801, 22–2201 (1967 ed.).

4. See note 2, *supra*, and related text.

5. Villaroman v. United States, 87 U.S.App. D.C. 240, 241, 184 F.2d 261, 262, 21 A.L. R.2d 1074 (1950).

6. See Jones v. Schanck, 101 U.S.App.D.C. 336, 337, 248 F.2d 658, 659 (1957); Villaroman v. United States, *supra* note 5, 87 U.S.App.D.C. at 241, 184 F.2d at 262; McFarland v. United States, 85 U. S.App.D.C. 19, 20–21, 174 F.2d 538, 539–540 (1949); Beach v. United States, 80 U.S.App.D.C. 160, 161, 149 F.2d 837,

838, cert. denied 326 U.S. 745, 66 S.Ct. 47, 90 L.Ed. 445 (1945); Ewing v. United States, 77 U.S.App.D.C. 14, 21, 135 F.2d 633, 640 (1942), cert. denied 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943); Economon v. Barry-Pate Motor Co., 55 App.D.C. 143, 144, 3 F.2d 84, 85 (1925). See also Williams v. United States, 117 U.S.App.D.C. 206, 207, 328 F.2d 178, 179 (1963).

7. See the cases cited *supra* note 6. See also 3 Wigmore, Evidence §§ 949, 950 (3d ed. 1940).

of residual hostility,[8] and the admissibility of extrinsic testimony to establish the event seems unquestioned.[9] The trial judge, of course, retains control over the testimonial scope,[10] but a judicial discretion soundly exercised contemplates that there will be ample latitude for pertinent inquiry.[11]

We deem immaterial the fact that the controversy over the whiskey occurred, if at all, three days after commission of the offenses laid at appellant's doorstep. Appellant's effort was to show Robinson's animosity as a possible explanation, not for the report he made to the police, but for the damaging testimony he gave at the trial. Robinson's emotional bent on the witness stand, and not at some point prior to the offenses, constituted the important subject for investigation.[12]

The affair inquired of was not as a matter of law so remote in time as to lack materiality for this purpose,[13] and it was appellant's prerogative to risk the accompanying reference to another crime.

█ In our view, the effect of the exclusionary ruling was to cut short a legitimate defensive endeavor. But this holding does not completely dispose of the matter, for unless the ruling operated detrimentally to appellant we would be obliged to disregard it.[14] Robinson, however, was the Government's star witness; his testimony aside, appellant stood unlinked with the crimes. On the other hand, while appellant emphatically denied complicity, there was no evidence, save from his own lips, to support his alibi claim. With credibility so vital to resolution of the issue their diametrically opposed versions generated, we think the probability of injury is so grave that appellant must be afforded a new trial.[15]

8. Fields v. State, 46 Fla. 84, 35 So. 185, 186 (1903); Carlyle v. State, 85 Ga.App. 223, 68 S.E.2d 605, 607 (1952); State v. Rowe, 238 Iowa 237, 26 N.W.2d 422, 425 (1947); State v. Pontery, 19 N.J. 457, 117 A.2d 473, 480–481 (1955); People v. McDowell, 9 N.Y.2d 12, 210 N.Y.S.2d 514, 172 N.E.2d 279, 280 (1961); State v. Goff, 79 S.D. 138, 109 N.W.2d 256, 258 (1961).

9. Villaroman v. United States, *supra* note 5, 87 U.S.App.D.C. at 241, 184 F.2d at 262; Ewing v. United States, *supra* note 6, 77 U.S.App.D.C. at 21, 135 F.2d at 640; Greatreaks v. United States, 211 F.2d 674, 676, 14 Alaska 610 (9th Cir. 1954); In re Gamble, 244 N.C. 149, 93 S.E.2d 66, 70 (1956); Lansdale v. State, 143 Tex.Cr.R. 167, 158 S.W.2d 75 (1942); 3 Wigmore, Evidence §§ 943, 948 (3d ed. 1940).

10. See 3 Wigmore, Evidence §§ 944, 951 (3d ed. 1940). See also Williams v. United States, *supra* note 6, 117 U.S.App.D.C. at 207, 328 F.2d at 179; Beach v. United States, *supra* note 6, 80 U.S.App.D.C. at 161, 149 F.2d at 838.

11. See 3 Wigmore, Evidence § 944 (3d ed. 1940). See also Jones v. Schanck, *supra* note 6, 101 U.S.App.D.C. at 337, 248 F.2d at 659; Villaroman v. United States, *supra* note 5, 87 U.S.App.D.C. at 241, 184 F.2d at 262.

12. Eye v. Kafer, Inc., 202 Cal.App.2d 449, 20 Cal.Rptr. 841, 846 (1962); Sutton v. State Highway Dept., 103 Ga.App. 29, 118 S.E.2d 285, 287 (1961); Pope v. State, 24 Okl.Cr. 213, 217 P. 498, 501 (1923); State v. McCann, 43 Or. 155, 72 P. 137, 139 (1903).

13. Eye v. Kafer, Inc., *supra* note 12, 20 Cal.Rptr. at 846; State v. Kenstler, 44 S.D. 446, 184 N.W. 259, 260 (1921); Missouri, K. & T. Ry. Co. of Texas v. St. Clair, 21 Tex.Civ.App. 345, 51 S.W. 666, 667 (1899). See also McFarland v. United States, *supra* note 6, 85 U.S.App.D.C. at 20–21, 174 F.2d at 539–540. Cf. Blackman v. State, 20 Ala.App. 281, 102 So. 147, cert. denied 212 Ala. 248, 102 So. 148 (1924).

14. F.R.Crim.P. 52(b). See also Hawkins v. United States, 114 U.S.App.D.C. 44, 47–48, 310 F.2d 849, 851 (1962); Shelton v. United States, 83 U.S.App.D.C. 257, 260–261, 169 F.2d 665, 668, cert. denied 335 U.S. 834, 69 S.Ct. 24, 93 L.Ed. 387 (1948).

15. Compare Villaroman v. United States, *supra* note 5, 87 U.S.App.D.C. at 241, 184 F.2d at 262; McFarland v. United States, *supra* note 6, 85 U.S.App.D.C. at 20–21, 174 F.2d at 539–540.

## II

In support of his alibi defense, appellant told the jury that he shared Mrs. Gaither's quarters over the eve of Thanksgiving until somewhat after the crimes were uncovered. He said, too, that he was thereafter in the company of Mrs. Gaither, and from time to time of others he named, until well into the afternoon of Thanksgiving Day, but none of them was called as a corroborating witness. This the prosecuting attorney emphasized during argument to the jury, and the trial judge, at the Government's request, broadly charged the jury that it might infer that the testimony of a witness peculiarly available to but not called by a party would have been unfavorable to that party.[16]

 We have frequently reiterated the principle that a party's failure to utilize a witness "peculiarly within his power to produce * * * whose testimony would elucidate the transaction"[17] permits an inference that the testimony would have been unfavorable.[18] But we have carefully restricted application of this rule to situations where it is "peculiarly within" the party's "power to produce" the witness[19] and where, as well, the witness' testimony "would elucidate the transaction."[20] And we have outlawed both comment[21] and instruction[22] as to absent witnesses where either of these conditions was lacking.

On this record, one must speculate as to appellant's capability, and the more so as to one peculiar to him, to have brought forth any of the uncalled witnesses, including Mrs. Gaither.[23] Should, in fu-

16. The instruction was: "Now, also you will recall that when the defendant was testifying he mentioned a number of people and places in connection with his testimony. He said that on the 25th he was at certain places and he saw people at certain times. Now, you are told this: There is a rule to the effect that if a witness is peculiarly available to one side and the witness is not called by that side, then the jury may infer that if the absent witness had been called that the testimony would not be favorable to that party to whom he was peculiarly available and who did not call him."

17. Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 37 L.Ed. 1021 (1893).

18. See the cases cited *infra* notes 19 and 20.

19. Pennewell v. United States, 122 U.S. App.D.C. 332, 333, 353 F.2d 870, 871 (1965); Richards v. United States, 107 U.S.App.D.C. 197, 200, 275 F.2d 655, 658, cert. denied 363 U.S. 815, 80 S.Ct. 1253, 4 L.Ed.2d 1155 (1960); Billeci v. United States, 87 U.S.App.D.C. 274, 278–279, 184 F.2d 394, 398–399, 24 A.L.R.2d 881 (1950); McGuire v. United States, 84 U.S.App.D.C. 64, 65, 171 F.2d 136, 137–138 (1948); Egan v. United States, 52 App.D.C. 384, 396, 287 F. 958, 969–970 (1923). See also Morrison v. United States, 124 U.S.App.D.C. 330, 333, 365 F.2d 521, 524 (1966). Cf. Stevens v. United States, 115 U.S.App.D.C. 332, 334, 319 F.2d 733, 735 (1963); McAbee v. United States, 111 U.S.App.D.C. 74,

76–77, 294 F.2d 703, 705–706 (1961), cert. denied 368 U.S. 961, 82 S.Ct. 406, 7 L.Ed.2d 392 (1962); Milton v. United States, 71 App.D.C. 394, 397, 110 F. 2d 556, 559 (1940).

20. Pennewell v. United States, *supra* note 19, 122 U.S.App.D.C. at 333, 353 F.2d at 871; Richards v. United States, *supra* note 19, 107 U.S.App.D.C. at 199–200, 275 F.2d at 657–658; McGuire v. United States, *supra* note 19, 84 U.S.App.D.C. at 65–66, 171 F.2d at 137–138. See also Morton v. United States, 79 U.S.App. D.C. 329, 332 n. 11, 147 F.2d 28, 31 n. 11, cert. denied 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428 (1945). Cf. Stevens v. United States, *supra* note 19, 115 U.S. App.D.C. at 334, 319 F.2d at 735; Milton v. United States, *supra* note 19, 71 App.D.C. at 397, 110 F.2d at 559.

21. Pennewell v. United States, *supra* note 19, 122 U.S.App.D.C. at 333, 353 F.2d at 871.

22. Billeci v. United States, *supra* note 19, 87 U.S.App.D.C. at 278–279, 184 F.2d at 398–399; McGuire v. United States, *supra* note 19, 84 U.S.App.D.C. at 65–66, 171 F.2d at 137–138; Egan v. United States, *supra* note 19, 52 App.D.C. at 396, 287 F. at 969–970.

23. Among the circumstances which do not appear are the extent of appellant's knowledge of the whereabouts of the witnesses at the time of trial; their then physical amenability to subpoena; and, on the other hand, the Government's opportuni-

ture proceedings, the Government seek to capitalize on such an omission by appellant, this aspect of the matter must first be suitably investigated. And a difficulty perhaps even more serious arises from the circumstance that the prosecutor's argument invited and the court's instruction permitted the inference irrespective of whether the witness' testimony "would elucidate the transaction." While Mrs. Gaither might have shed light on appellant's whereabouts when the offenses occurred, others appellant said he saw much later in the day could not have testified on that score. The jury, however, lacking direction, might have labored under the impression that an inference adverse to appellant could be drawn from the absence of any of these persons.[24]

■ We are aware of the fact that appellant did not voice objection in the District Court to the prosecutor's comments or the court's instruction but, with reversal required for another reason, we have discussed their propriety for the benefit of the retrial. It bears repeating, however, that we ordinarily restrict our review to issues litigated in the trial court. Failure to identify and contest error there may well mean that the point will not be entertained here.[25]

Reversed and remanded.

TAMM, Circuit Judge (dissenting):

I would affirm the District Court. I believe that the learned trial judge acted

properly in foreclosing cross examination of the identifying witness as to an event which occurred several days after that witness had reported the defendant-appellant's conduct to the police. Testimony that tends to show bias is generally admissible. Underlying that admissibility is an inference that biased testimony will probably differ from unbiased testimony. Here, however, there was no contention that the identifying witness' report to the police differed in any respect from his description of the events at trial. Since his allegedly biased story *did not* differ from his unbiased version, no purpose could have been served in allowing the contested cross examination. Also, I believe that pursual of this line of questioning would have resulted in the appellant's furnishing information relating to his commission of another crime. This evidence would, of course, have been prejudicial to the defendant, and its disclosure would have necessitated a mistrial and retrial in the case.

There is a further but very practical justification for the trial court's ruling on this proffered evidence. The introduction of this evidence would have brought into the case a collateral issue requiring the utilization of a substantial amount of court time in determining ultimately the truth or falsity of an issue which was most certainly res inter alias actos and of dubious value, because of the time element, as affecting credibility.

ties to itself call them after learning of their identity, either before or during trial. In this partial enumeration, we do not overlook the importance of inquiry as to whether, with respect to either side, it could "reasonably be supposed or inferred that the missing witness would have supported" that side's version "even if true." Pennewell v. United States, *supra* note 19, 122 U.S.App.D.C. at 333, 353 F.2d at 871.

24. 2 Wigmore, Evidence § 287 (3d ed. 1940).

25. Miller v. Avirom, 127 U.S.App.D.C. 367, 369–371, 384 F.2d 319, 321–23 (1967) and cases cited. But see Crawford v. United States, 91 U.S.App.D.C. 234, 237, 198 F. 2d 976, 979 (1952); Payton v. United States, 96 U.S.App.D.C. 1, 4, 222 F.2d 794, 797 (1955).